

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-9-2000

# Merkle v. Upper Dublin Schl. Dist.

Precedential or Non-Precedential:

Docket 99-1613

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Merkle v. Upper Dublin Schl. Dist." (2000). *2000 Decisions.* Paper 93.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/93

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 9, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-1613

LOU ANN MERKLE
        Appellant

v.

UPPER DUBLIN SCHOOL DISTRICT;
UPPER DUBLIN TOWNSHIP POLICE DEPARTMENT;
MARGARET THOMAS; CLAIR BROWN, JR., DR.;
JACK HAHN, DETECTIVE

Appeal from the United States District Court
For the Eastern District of Pennsylvania
D.C. No.: 98-cv-03703
District Judge: Honorable Robert F. Kelly

Argued: January 24, 2000

Before: GREENBERG, ROTH, and ROSENN,
Circuit Judges.

(Filed: May 9, 2000)

        A. Martin Herring (Argued)
        A. Martin Herring & Associates
        1845 Walnut Street, Suite 2240
        Philadelphia, PA 19103
         Counsel for Appellant

          Jeffrey H. Quinn (Argued)
          Duffy & Quinn
          Independence Square West
          The Curtis Center, Suite 1150
          Philadelphia, PA 19106
           Counsel for Appellees
          Upper Dublin School, Margaret
          Thomas, and Clair Brown

          L. Rostaing Tharaud (Argued)
          Marshall, Dennehey, Warner,
           Coleman & Goggin
          1845 Walnut Street
          Philadelphia, PA 19103
           Counsel for Appellees
          Upper Dublin Twp. Police and
          Jack Hahn

OPINION OF THE COURT

ROSENN, Circuit Judge.

This appeal presents several interesting questions arising out of an alleged constitutional tort committed by a township school district and its superintendent in the arrest and prosecution of one of their teachers for the unlawful removal of school supplies. The plaintiff, Lou Ann Merkle, formerly a teacher at the Upper Dublin School District ("the District"), filed this action in the U.S. District Court for the Eastern District of Pennsylvania under 42 U.S.C. S 1983. She alleged violations of her rights under the First, Fourth, Sixth, and Fourteenth Amendments, as well as pendent state law claims for defamation, invasion of privacy, false arrest and malicious prosecution. The defendants are the District, District Superintendent Dr. Clair Brown, Jr., and Sandy Run Middle School Principal Margaret Thomas (collectively, "the School Defendants"); and the Upper Dublin Police Department and Upper Dublin Police Detective Jack Hahn (collectively, "the Police Defendants").

The district court granted summary judgment in favor of

2

all defendants as to Merkle's federal law claims. The court held that Merkle had failed to offer sufficient evidence to establish a genuine issue of material fact as to these claims, and also that Superintendent Brown, Principal Thomas, and Detective Hahn were entitled to qualified immunity. Having entered judgment for all defendants on these federal claims, the district court refused to exercise jurisdiction over Merkle's state law claims, and accordingly dismissed those claims without prejudice. Merkle timely appealed.[1] We affirm the judgment of the district court as it relates to the Police Defendants and the principal, Margaret Thomas, but reverse as it applies to the School District and its superintendent, Dr. Clair Brown.

I.

Background

Merkle taught art at Sandy Run Middle School in the Upper Dublin School District of Pennsylvania. She had been a proponent of raising multicultural awareness in the District, and at times had been outspoken about her views. She was a leader in a local chapter of a group known as Seeking Educational Equity and Diversity, or SEED, which she had helped to bring to the school district with the approval of Superintendent Clair Brown. In addition, at a May 1996 public meeting of the District's Board of School Directors, Merkle spoke in support of a parent's request that The Adventures of Huckleberry Finn be removed from the District's required reading list because of its offensive language with respect to African Americans. Sometime thereafter, Superintendent Brown acceded to this request.

Margaret Thomas took over as principal of Sandy Run prior to the start of the 1996-97 school year. Merkle testified in her deposition in this case that shortly after Thomas assumed the principal post, she mentioned to

_____

1. The district court had jurisdiction over Merkle's federal law claims pursuant to 28 U.S.C. SS 1331 and 1343(a)(3), and over her state law claims pursuant to 28 U.S.C. S 1367(a). This court has appellate jurisdiction pursuant to 28 U.S.C. S 1291.

3

Merkle that she had attended the May 1996 board meeting, and that she felt it was a "mistake" for Merkle to publicly challenge a District policy at that meeting.

On August 27, 1997, prior to the start of the 1997-98 school year, Merkle and fellow art teacher Nancy

Markowich were cleaning out the art supplies closet at the Sandy Run Middle School. They apparently decided that some of the items in the supply closet were no longer useful and could be donated to the North Hills Community Center, a local center serving underprivileged children. These items included two cartons containing a total of 144 unopened boxes of Crayola Crayons.[2] At this time, Merkle was unaware of any official school procedures for obtaining permission to donate art supplies, and apparently believed that such decisions were within the art teacher's discretion. The next day, Merkle brought these items to her car, which was parked outside the school. Margaret Thomas and Sandy Run Assistant Principal Wanda Anderson saw Merkle loading these boxes of supplies into her car, and Thomas approached Merkle and asked what she was doing. Merkle explained that Mrs. Markowich and she concluded that these materials "weren't useful in the curriculum," and that they intended to donate them to the North Hills Community Center. Thomas asked if Merkle had authorization to donate these materials. Merkle responded that she did not, and asked what Thomas suggested. Thomas replied that she did not know but that she would call the District's business manager to ascertain if there was a procedure for donations of school property. Thomas directed Merkle that in the meantime she should bring the art materials back inside the school. Merkle promptly complied.

When Thomas called the business manager, he informed her that a list of the items sought to be donated must be compiled and submitted to the school board for approval. Thomas also spoke with Superintendent Brown who, after

_____

2. The total cost of the supplies in question is in dispute. The District contends the supplies have a approximate value between $250 and $400. Merkle claims, however, that the supplies are worth no more than $24.

4

consulting the District's attorney, instructed Thomas to call the Upper Dublin Police Department to report the incident. Apparently Brown, however, personally called the Chief of Police to tell him that Thomas would be calling to report a teacher whom she had witnessed taking District property without permission, and who had admitted that she had done this in the past as well. Thomas informed Merkle that Brown had instructed her to call the police, and Thomas carried out Brown's instruction.

The Police Department assigned Detective Hahn to the case. Hahn met with Thomas at Sandy Run Middle School on August 29, the day after the incident. Thomas told Hahn about the incident, and according to Hahn, explained that the District wanted "charges filed" against Merkle. Based solely on the information he learned from Thomas, Hahn swore out an affidavit of probable cause for Merkle's arrest, as well as a criminal complaint against her. In Hahn's affidavit of probable cause, he averred that Thomas informed him that Merkle admitted to "stealing the supplies from the school." Hahn testified in his deposition that Thomas actually used the word "stealing" during their meeting, that this was the basis for his determination that probable cause for arrest did exist, and that he did not take any written statement from her. In Thomas's deposition in this case, however, she testified that she did not tell Hahn that Merkle had confessed to "stealing," but rather that Merkle had acknowledged that she knew the art materials were District property, and that she had not asked for or received permission to take these materials from the school. Nevertheless, Detective Hahn also testified that "taking another's property without permission" meant the same thing to him as "stealing."

That same day, a meeting took place between Merkle, Superintendent Brown, Principal Thomas, and the District's director of personnel. Merkle was represented at this meeting by individuals from her teacher's union. At this meeting, Merkle was informed that she would be suspended from her teaching position without pay pending the outcome of an investigation.

On September 2, Hahn arrested Merkle and charged her with theft by taking pursuant to 18 Pa. Cons. Stat. Ann.

5

S 3921.3 The police criminal complaint also charged her with receipt of stolen property pursuant to 18 Pa. Cons. Stat. Ann. S 3925,4 and criminal attempt pursuant to 18 Pa. Cons. Stat. Ann. S 901.5 After her arrest, the School District suspended Merkle from her position, and Superintendent Brown wrote a letter to the school board recommending that Merkle be dismissed on the ground of "immorality."

District Justice Patricia Zaffarano held a preliminary hearing on October 6, 1997, and bound Merkle over for trial. Thereafter, the incident received considerable attention in the local newspaper. The District issued a public statement explaining that Merkle was observed taking art supplies from Sandy Run, that Detective Hahn had filed a criminal complaint charging Merkle with theft, receiving stolen property, and criminal attempt to commit theft, that a district justice had found that a prima facie case existed on these charges, and that a trial date was going to be set. The District refused to make additional comment on the matter, except to say that the district attorney would contact the newspaper when he deemed appropriate.

Merkle filed a motion for habeas corpus in the Court of Common Pleas for Montgomery County, and on January 16, 1998, her motion was granted and the charges against her dismissed. Merkle pursued administrative remedies regarding her employment status, and after 91 days of suspension and arbitration under the collective bargaining

_____

3. This provision states that "[a] person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa. Cons. Stat. Ann. S 3921(a).

4. This provision states that "[a] person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." 18 Pa. Cons. Stat. Ann. S 3925(a).

5. This provision states that "[a] person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa. Cons. Stat. Ann. S 901(a).

agreement, she won reinstatement with back pay. Merkle has since left her position at the District.

Merkle's complaint in the instant action raised numerous federal claims. Against the Police Defendants, she claims violation of her Fourth Amendment rights by arresting her without probable cause, and, with respect to the Police Department, by failing to train its detectives so as to prevent her arrest without probable cause. Against the School Defendants, she claims (1) violation of her First Amendment rights by retaliating against her for her outspokenness on the issue of multicultural awareness, (2) violation of her Sixth Amendment rights by instituting a malicious prosecution against her, and (3) violation of her Fourteenth Amendment rights by defaming her, thereby infringing on her liberty interest in her good name, reputation, honor and integrity.6 She also raises a number of state law claims against all defendants.

II.

Discussion

This court's review of the district court's order granting summary judgment in favor of the defendants is plenary. See Torres v. McLaughlin, 163 F.3d 169, 170 (3d Cir. 1998), cert. denied, 120 S. Ct. 797 (2000). Summary judgment may be granted where there exists no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In addressing a motion for summary judgment, the facts must be viewed in the light most favorable to Merkle, and she is entitled to every reasonable inference that can be drawn from the record. See Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997). We first discuss Merkle's claims against the Police Defendants, and then her claim against the School Defendants.

_____

6. Although Merkle's complaint alleges her constitutional claims and a section 1983 claim separately, the district court correctly interpreted all of the constitutional claims as various bases supporting a claim arising under section 1983.

A.

The Police Defendants

1.

Detective Hahn

On the appeal to this court, Merkle contends that the district court erred in granting summary judgment in favor of the Police Defendants on her Fourth Amendment claim that Detective Hahn arrested her without probable cause. "Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti v. New Jersey State Police, 71 F.3d 480, 482 (3d Cir. 1995). Generally, "the question of probable cause in a section 1983 damage suit is one for the jury." Montgomery v. De Simone , 159 F.3d 120, 124 (3d Cir. 1998); see also Sharrar v. Felsing, 128 F.3d 810, 818 (3d Cir. 1997); Deary v. Three Un-Named Police Officers, 746 F.2d 185, 190-92 (3d Cir. 1984). This is particularly true where the probable cause determination rests on credibility conflicts. See Sharrar , 128 F.3d at 818; Deary, 746 F.2d at 192. However, a district court may conclude "that probable cause exists as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding," and may enter summary judgment accordingly. Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997).

In Sharrar v. Felsing, 128 F.3d, 810, 817-18 (3d Cir. 1992) this court reiterated the well-established rule that probable cause is defined in terms and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing a crime. Id. It is the function of this court to determine whether the objective facts available to Detective Hahn at the time he arrested Merkle were sufficient to justify a reasonable belief that she had committed a theft. See id. at 818; United States v. Glasser, 750 F.2d 1197, 1206 (3d Cir. 1984), cert.

denied, 471 U.S. 1018 (1985). In Illinois v. Gates, 462 U.S. 213 (1983), the Court adopted a "totality of the circumstances" approach in assessing the existence of probable cause to issue a search warrant and "identified a `common sense' aspect to the issue of probable cause." (Quoted in Glasser, 750 F.2d at 1201.) Moreover, since this appeal comes to us from an order granting summary judgment in favor of the defendants, the facts must be considered in the light most favorable to Merkle. See Gallo v. City of Philadelphia, 161 F.3d 213, 219 (3d Cir. 1998).

We, therefore, examine the evidence produced by Merkle to determine whether she has raised a genuine issue of material fact as to whether Detective Hahn had probable cause to arrest her. Moreover, the common law presumption raised by a magistrate's prior finding that probable cause exists does not apply to section 1983 actions.

The issue of whether Detective Hahn had probable cause to arrest rests almost entirely on his knowledge of what Merkle stated to Thomas when the latter interrupted the removal of the supplies. Merkle's version of what occurred is corroborated by Thomas. We therefore have a situation where Merkle was in the process of removing art teaching supplies which she and her colleague, Markowich, considered of no use in their curriculum. After having been informed of prior unsuccessful efforts to ascertain whether other teachers in the school had use for the unopened crayons, Merkle decided to turn over the supplies to the North Hills Community Center. In loading the supplies into her car for that purpose, Merkle assumed that as an art teacher, she had the discretion and authority to do this.

When questioned by Thomas, Merkle promptly and candidly informed her that the supplies, in her mind, were useless and that she believed she implicitly had the authority to dispose of them. When Thomas questioned Merkle's authority to do this, Merkle promptly returned the supplies to the school building. Thomas did not regard the removal as a theft.

If "at the moment the arrest was made . . . the facts and circumstances within [the defendant's] knowledge and of

9

which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing" that the plaintiff had violated the law, probable cause is present. Hunter v. Bryant, 502 U.S. 224, 228 (1991) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)). In challenging Detective Hahn's determination that probable cause to arrest existed, Merkle has the burden of showing, by a preponderance of the evidence, that (1) Hahn knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions in his affidavit of probable cause that create a falsehood in applying for an arrest warrant; and (2) such statements or omissions are material to the finding of probable cause. See Franks v. Delaware, 438 U.S. 145, 171–72 (1978); Sherwood, 113 F.3d at 399.

In his affidavit, Hahn stated that Principal Thomas told him that Merkle had admitted to "stealing" the art supplies. In his deposition in this case, Hahn testified that had Merkle not admitted improper conduct to Thomas, he would not have concluded that probable cause existed to arrest. As the district court acknowledged, however, there is conflicting testimony on the record about the accuracy of Hahn's description of Merkle's admission. Although Hahn testified that Thomas told him Merkle confessed to "stealing," Thomas testified that she merely told him that Merkle admitted to taking school property without permission. Detective Hahn's testimony on this point is somewhat confused. He testified that for his purposes, "stealing" meant the same thing to him as taking another's property without permission. However, he also testified that had Thomas not used the word "stealing," he would not have concluded that there existed probable cause to arrest Merkle. The district court found that this factual dispute was immaterial, holding that "when an individual . . . is found loading her car with materials that do not belong to her, and reliable witnesses attest to this, a police officer who gets the report has probable cause to arrest." (Op. at 11). Specifically, the court held that these circumstances were sufficient to support an arrest for the crime of theft by taking, which requires only the taking of property with the intent to deprive the owner thereof. (Op. at 12). 7

_____

7. The district court did not address whether Hahn had probable cause to arrest Merkle for the other crime with which she was charged, receipt

10

Viewing the facts in the light most favorable to Merkle, this court must assume that Thomas told Hahn merely that Merkle admitted that she had no permission to take the property she was found loading into her car. The question therefore becomes whether a reasonable person in Hahn's position could have concluded, based on this knowledge, that Merkle had committed a crime. Merkle argues that the district court's reasoning is flawed because the mere report of a witness that an individual was seen loading her car with materials that did not belong to her does not establish probable cause in all cases. For example, a teacher might be taking home materials belonging to the school to prepare class lessons. This, Merkle, contends, does not evidence an intent to deprive the District of its property. However, Thomas also told Hahn of Merkle's announced intention to give the property to the North Hills Community Center. Thus, Hahn possessed knowledge of a credible report from a credible eyewitness that Merkle did intend to deprive the District of its property. Accordingly, a reasonable jury could not find that Hahn lacked knowledge of sufficient facts to establish probable cause to arrest Merkle for the crime of theft by taking.8

---

of stolen property. Arguably, probable cause to arrest Merkle for this crime did not exist. This crime requires that the defendant must have known or believed the property at issue was "stolen." See supra note 3. There was no indication that Merkle viewed the art supplies in this manner. Rather, she appears to have genuinely believed that she had discretion to donate the property. Regardless, if Merkle's arrest on the charge of theft by taking was proper, we will not invalidate it merely because she was also improperly charged with the additional crime. Although a different conclusion may be warranted if the additional charge results in longer detention, higher bail, or some other added disability, there is no evidence in this record that the charge of receipt of stolen property had such effect.

8. Merkle also contends that Hahn lacked probable cause because he failed to interview other witnesses, such as Vice Principal Anderson, art teacher Markowich, or Merkle herself, prior to making the arrest. However, Hahn had every reason to believe a credible report from a school principal who witnessed the alleged crime. This report alone sufficiently established probable cause. Hahn was not required to undertake an exhaustive investigation in order to validate the probable cause that, in his mind, already existed. See Gramenos v. Jewel Cos., Inc., 797 F.2d 432, 439 (7th Cir. 1986), cert. denied, 481 U.S. 1028 (1987); Morrison v. United States, 491 F.2d 344, 346 (8th Cir. 1974).

11

2.

The Police Department

In her complaint, Merkle also charged the Upper Dublin Township Police Department with violating her Fourth Amendment rights. Under section 1983, municipal liability arises only when a constitutional deprivation results from official custom or policy. See Monell v. Department of Social Servs. of City of New York, 436 U.S. 658, 690-91 (1978); Montgomery, 159 F.3d at 126-27 (citing City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989)). Merkle makes no argument on appeal regarding her claim that the Upper Dublin Police Department violated her Fourth Amendment rights by failing to properly train Detective Hahn. It appears that Merkle has waived this claim, and therefore, this court need not address it. See Warren G. v. Cumberland County Sch. Dist., 190 F.3d 80, 84 (3d Cir. 1999) (issue waived if not raised in party's opening brief).

B.

The School Defendants

Merkle also claims that the School Defendants (1) maliciously prosecuted her in violation of the her Sixth Amendment rights, (2) retaliated against her for her outspoken support of multiculturalism in violation of her First Amendment rights, and (3) caused harm to her reputation in violation of her Fourteenth Amendment rights.

Merkle contends that the School Defendants violated her constitutional rights by initiating and pursuing her prosecution even though Superintendent Brown and Principal Thomas knew that she had committed no crime.9 Although the charges against Merkle were filed and the actual prosecution conducted by Detective Hahn, 10 both

_____

9. Based on Merkle's complaint, her claims against the District appear to be based on the acts of Superintendent Brown as the District's policymaking official.
10. Apparently, in cases of this type, the investigating detective often represents the Commonwealth at the preliminary hearing. Consequently, Detective Hahn acted as the prosecutor at Merkle's preliminary hearing.

Hahn and the Chief of Police testified that the police department would not have pressed charges and pursued the criminal prosecution unless (1) the victim requested it and (2) it believed it had probable cause to do so. The Chief of Police further testified that once charges werefiled, those charges would not be withdrawn unless the victim so requested. It is undisputed that in his initial telephone call to the Chief of Police, Superintendent Brown said he wanted criminal charges filed against Merkle if sufficient evidence existed. In her initial meeting with Detective Hahn, Thomas informed him that Superintendent Brown wanted to press charges against Merkle. Prior to the preliminary hearing, Hahn asked Superintendent Brown if he still wanted to go through with the prosecution, and Dr. Brown replied that he did. Therefore, the School Defendants, not just the Police Defendants, are responsible for Merkle's prosecution.

The district court analyzed Merkle's S 1983 malicious prosecution claim based on the elements of the common law tort of malicious prosecution. In Pennsylvania, a plaintiff alleging common law malicious prosecution must show (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff 's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice. See Hilfirty v. Shipman, 91 F.3d 573, 579 (3d Cir. 1996). The court held that Merkle's claim failed on the third element, relying on its holding that Detective Hahn had probable cause to arrest Merkle.

Although the parties do not so contend, the district court's analysis appears not to have been abreast of recent developments in the law. It was at one time the law of this circuit that a plaintiff alleging a section 1983 claim for malicious prosecution would be required only to show the elements of the common law tort. See Lee v. Mihalich, 847 F.2d 66, 69-70 (3d Cir. 1988). However, in the aftermath of the Supreme Court's decision in Albright v. Oliver, 510 U.S. 266 (1994), this court has acknowledged that this is no longer the case. In Albright, the Court held that a claim of malicious prosecution under section 1983 cannot be based

13

on substantive due process considerations, but instead must be based on a provision of the Bill of Rights providing "an explicit textual source of constitutional protection." Id. at 272 (citation and internal quotation marks omitted).

This court has since noted that Albright"casts doubt" on prior circuit precedent adopting common law malicious prosecution as the test in a S1983 action. Gallo v. City of Philadelphia, 161 F.3d 217, 221 (3d Cir. 1998). The court in Gallo analyzed whether a malicious prosecution claim arose from the Fourth Amendment, i.e., whether the prosecution worked a post-indictment "seizure" on the S 1983 plaintiff. The court concluded that the malicious prosecution at issue did work a post-indictment seizure where the plaintiff 's liberty "was constrained in multiple ways for an extended period of time." Id. at 225. Specifically, the plaintiff was subjected to travel restrictions and was compelled to attend a number of court hearings over an eight-and-a-half month period. Id. Accordingly, the Gallo court reversed the district court's grant of summary judgment for the defendants, and remanded for further proceedings.

We have expanded on the altered nature of the post-Albright malicious prosecution landscape in Torres v. McLaughlin, 163 F.3d 169 (3d Cir. 1998). The Torres court read Albright as standing for the proposition that a section 1983 malicious prosecution claim could be based on a constitutional provision other than the Fourth Amendment, including the procedural component of the Due Process Clause, so long as it was not based on substantive due process. Id. at 173.11

Merkle predicates her constitutional malicious prosecution claim on the First and Sixth Amendments. We turn to her Sixth Amendment claim first because it requires only a minimum of discussion. It is difficult to understand

_____

11. This court did not immediately recognize that Albright changed the manner in which S 1983 malicious prosecution claims must be analyzed. For example, in Hilfirty v. Shipman, decided two-and-a-half years after Albright, we continued to adhere to the pre-Albright common law analysis of malicious prosecution claims brought under S 1983. See 91 F.3d at 579.

14

how the Sixth Amendment is implicated here. That amendment affords individuals rights to a speedy trial, to an impartial jury, to know the nature and cause of a criminal accusation, to be confronted with the witnesses against them, and to effective assistance of counsel. Merkle makes no effort to relate her claim to the rights afforded by the Sixth Amendment. She does, however, explain that she was deprived of liberty by reason of the prosecution, because she was compelled "to attend court hearings and her job [was] placed in jeopardy as a result of being charged with a crime of moral turpitude." (Appellant's Br. at 25 n.9). The latter argument -- that her job was placed in jeopardy because she was charged with a crime of moral turpitude -- seems akin to a substantive due process argument. Indeed, no constitutional provision other than the substantive component of the Due Process Clause even arguably affords the protection Merkle asserts. As noted above, however, the Supreme Court held in Albright that a violation of substantive due process is no basis for a malicious prosecution claim brought pursuant to section 1983.

Merkle's former argument -- that she was compelled to attend court hearings by reason of the false prosecution -- seems like a Fourth Amendment seizure argument similar to the argument considered by this court in Gallo. Merkle has failed to assert the Fourth Amendment as the basis for her claim against the School Defendants, however, even though this court gave her the opportunity to do so at oral argument. We therefore do not address this argument.

Merkle next claims that the School Defendants instituted a criminal prosecution against her and suspended her from her teaching position to retaliate for her outspoken statements in support of multicultural awareness. Merkle's retaliation claim is analyzed under a three step, burden-shifting methodology. First, Merkle must demonstrate that her speech was protected. For purposes of this appeal, the parties concede that it was. Second, Merkle must show that her speech was a motivating factor in the alleged retaliatory action. Third, the School Defendants may defeat Merkle's claim by establishing that it would have taken the same adverse action against Merkle even in the absence of her protected speech. See Mt. Healthy City Sch. Dist. Bd. of

15

Educ. v. Doyle, 429 U.S. 274, 287 (1977); Latessa v. New Jersey Racing Comm'n, 113 F.3d 1313, 1319 (3d Cir. 1997).

The district court granted summary judgment for the School Defendants on the retaliation claim. The court found that the School Defendants would have suspended Merkle from her teaching position, even absent her speech, based on their discovery that she was putting school supplies into her car for which she was arrested. Merkle correctly points out that the district court defined the alleged retaliatory action too narrowly, focusing only on the District's decision to suspend Merkle. Merkle's claim of retaliation is directed at the whole course of conduct by the School Defendants in persisting to press criminal charges against her instead of handling the matter administratively.

That course of conduct grew out of a conversation between Thomas and Merkle when Thomas saw Merkle carrying openly and in daylight a carton of school supplies to her car. It is, however, the conduct which occurred after this that is significant: Superintendent Brown's telephone call to his friend, the Chief of Police, in which, despite Brown's knowledge that Merkle intended to donate the supplies to the North Hills Community Center, Brown expressed his desire for an investigation and prosecution; Brown's persistence despite the Chief 's query"are you sure you want to do this?"; the failure of the District to consider taking administrative action, rather than instituting criminal prosecution, against Merkle for what the police considered to be an internal school district matter, particularly in view of the lack of a school district policy on the disposal of surplus supplies; Brown's affirmation to Hahn before the preliminary hearing that Brown still wanted to prosecute Merkle; and Brown's recommendation to the school board that Merkle be dismissed on the ground of "immorality."

Additional conduct which we find significant is the statement Brown made to the press, after consulting with the District's solicitor, apparently in response to the events at a school board meeting at which approximately two hundred community residents protested Merkle's suspension and prosecution. The press release denied that the crayons could not be used by the District. It explained

16

that the school administration could not comment at the meeting on the action it had taken because, the District Justice having found a prima facie case on charges of theft, receipt of stolen property and criminal attempt at theft, "it is fundamental and basic to fairness and legal ethics that no comment by the parties be made in a criminal proceeding until the matter is adjudicated." The statement, however, gave no information on Merkle's version of the incident.

Brown claims to have acted out of concern that this incident was part of a pattern of unauthorized disposition of District property to the North Hills Community Center and elsewhere. Indeed, Thomas did report to Brown that the two cartons of crayons she found Merkle loading into her car were unopened.12 Under these circumstances, however, whether Brown acted out of a concern that valuable supplies were being stolen or whether he criminally prosecuted Merkle and terminated her contract with the District in retaliation for her activities in promoting multicultural awareness is a disputed question of fact for a jury and not a question of law for the trial court.

Merkle charges that the District embarked on its course of malicious prosecution because of her activities with SEED, which were protected, inter alia, by the First Amendment. Merkle played a leadership role in SEED and was a member of its academic and cultural sensitivity task force. SEED provided books and films to teachers to train them on diversity issues before problems arose in the classroom. It was through SEED that the protest was made to the school board of having "Huckleberry Finn" as required reading. After Merkle stated at a school board meeting that "Huckleberry Finn" should be"pulled,"

_____

12. Merkle was under the impression that the crayons were the result of "a gross over-order" about eight years before. She testified that over a course of years, Nancy Markowich put announcements in the daily bulletin that goes out to all teachers in the Sandy Run School offering the crayons, but no one requested them. In addition to the crayons, there was some dry powder paint, a jar or two of old tempera paint, and some dry glue. The cart with usable general supplies was rolled into the general supply closet for retention.

17

Thomas told Merkle that "when your school had a policy, as a teacher it's a mistake to speak out against it publicly."

Our review of this entire course of events convinces us that Merkle has not produced evidence that Thomas's actions, including her report to the superintendent of the removal of supplies, amounted to retaliatory action against Merkle. For that reason, we will affirm the district court's order granting summary judgment for Margaret Thomas. We differ with the district court, however, with respect to Merkle's claims against the Upper Dublin School District and its superintendent, Dr. Clair Brown. We believe that whether these defendants' actions against Merkle were retaliatory is, for purposes of summary judgment, influenced by the strength of Merkle's claim against them for common law malicious prosecution.

We begin our analysis as to the District and Brown with the threshold question of whether the presence of probable cause for Detective Hahn to make the arrest also imputes probable cause in behalf of the School Defendants to the criminal prosecution. The action of the School District in initiating the criminal proceedings and pressing unfounded criminal charges against Merkle can render the District liable for its major role in a malicious prosecution. Although the police may have acted on the reasonable belief that they had probable cause to arrest Merkle, whether the School Defendants had probable cause to pursue Merkle's prosecution is an independent inquiry, the outcome of which is not dictated by our holding that Hahn had probable cause to arrest Merkle. Hahn acted only on what Principal Thomas told him. As instigators of the arrest, however, it is possible that the District and Brown were in possession of additional information, not provided to Detective Hahn, that would negate any probable cause they may otherwise have had to prosecute Merkle. Thus, in analyzing the common law claim of malicious prosecution, we must consider the facts known to the District and its superintendent to determine whether they had probable cause to prosecute. See Simmons v. Poltrone, No. Civ. A. 96-8659, 1997 WL 805093, at *8 n.6 (E.D. Pa. Dec. 17, 1997); Doby v. Decrescenzo, No. Civ. A. 94-3991, 1996 WL 510095, at *13 (E.D. Pa. Sept. 9, 1996); Hess v. County of Lancaster, 514 A.2d 681, 683-84 (Pa. Commw. Ct. 1986).

18

On the basis of the facts as outlined above, see supra at 17, we conclude that a jury could find that Brown, and through him the School District, acted maliciously in pressing unfounded criminal charges against Merkle and could reasonably infer that Merkle's protected speech was a motivating factor in this course of action. Where a reasonable inference can be drawn that an employee's speech was at least one factor considered by an employer in deciding whether to take action against the employee, the question of whether the speech was a motivating factor in that determination is best left to the jury. See Watters v. City of Philadelphia, 55 F.3d 886, 891 n.3 (3d Cir. 1995); Johnson v. Lincoln Univ. of Commonwealth System of Higher Educ., 776 F.2d 443, 454 (3d Cir. 1985); Clemens v. Dougherty County, Georgia, 684 F.2d 1365, 1368–71 (11th Cir. 1982).

We believe the evidence of Merkle's successful challenge to the School District's inclusion of "Huckleberry Finn" in the school's curriculum at an open meeting and her outspokenness about the need for greater cultural sensitivity in the District is sufficient on the facts presented to raise such questions of fact. When this arguably disfavored protected speech is coupled with (1) Brown's determination to pursue a criminal prosecution even though the objective evidence and police comments indicated that the matter should be pursued administratively, and (2) his deliberate recommendation that Merkle be permanently discharged for "immorality" as opposed to simply pursuing administrative alternatives such as "verbal counseling at the time of the incident or at most a written warning" (which the arbitrator later found would have been an appropriate, proportional response), room for the inference of discriminatory animus expands considerably.

An arrest is a serious matter, especially an arrest of a public school teacher whose professional career instantaneously is put in jeopardy by stigmatic public charges. The arrest humiliates the teacher before her pupils, her teaching colleagues and the public. To arrest a teacher on the "scanty grounds" adduced here, Albright v. Oliver, 975 F.2d 343, 345 (7th Cir. 1992), especially when

19

there were other less oppressive options, is shocking. The supplies, even under the District's estimate of their value, were not of sufficient moment to warrant such drastic and irreparable action. If, in their disposition, Merkle exceeded her discretionary authority or even violated her presumptive authority,[13] there were reasonable alternatives by which the District could exercise control and discipline and give each teacher appropriate notice of school policy for disposing of useless or surplus supplies. Under these circumstances, and especially in the face of doubts on the part of the police officers, a jury could reasonably find that the Superintendent's decision to arrest and his deliberate decision to recommend to the School Board that Merkle's contract be terminated on the basis of "immorality" was motivated by a desire to retaliate against her for her protected activities and not by an interest in protecting the unauthorized removal of supplies. A jury could reasonably find that the underlying motivation for the discharge lay embedded in Merkle's temerity to advocate her multicultural program to the School District. In any event, these were questions of fact for jury determination, not questions of law for the court.

_____

13. Dr. Brown acknowledged that the faculty handbook does not set forth any policy concerning the disposal of useless or surplus supplies. He testified on deposition that not every single supply item given to a teacher requires Board approval, that some "are thrown out or discarded."

He further testified:

> Q: So your position is that when an item becomes unusable it should be kept, and then you need board approval for that?
>
> A: I didn't say that. I said when an item becomes disposable or in the condition to be disposed of, there's an orderly process to be disposed of.
>
> Q: And some of that is within the teacher's discretion; correct?
>
> A: It's in the teacher's discretion to recommend the disposal of materials, certainly.
>
> Q: And even to dispose of them, isn't it?
>
> A: I guess that's a judgment that a teacher can make, sure.

20

The dissent rests entirely on the conclusion that Merkle actually committed the crime of theft when "she unlawfully took or exercised control over [the property] with the admitted intent to deprive the School District of it." Concurrence and Dissent at 26 and 32. This conclusion, it believes, is commanded by language in Gottesfeld v. Mechanics & Traders Insurance Co., 173 A.2d 763, 766 (Pa. Super. Ct. 1961). Significantly, the Gottesfeld case relied upon the Pennsylvania Supreme Court's decision in Thomas v. Kessler, 5 A.2d 187 (Pa. 1939). In Thomas, the plaintiff, a beneficiary of a trust which owned shares of a newspaper, went to the newspaper's offices and took some stationary, believing she had the right to do so by virtue of her interest in the trust. She was charged by the newspaper's president with larceny, and she in turn filed a malicious prosecution action against the president. The Court of Common Pleas entered a compulsory nonsuit in the malicious prosecution action, holding that the newspaper's president had probable cause to believe the plaintiff had committed a theft. On appeal, the Pennsylvania Supreme Court reversed and remanded for trial. The Supreme Court held:

> When the facts and circumstances . . . are considered, it is obvious that no larceny was committed, that there was no felonious intent in plaintiff 's mind , that she was not stealing the few sheets of paper, and that she took it because she thought, mistakenly perhaps, that she had the right to.

Id. at 188 (emphasis added). The court summarized its holding as follows: "It has been repeatedly held that when one takes property under a claim of right, even though mistaken, larceny is not committed." Id.; accord Penn-Air, Inc. v. Indemnity Ins. Co. of N. Am., 269 A.2d 19, 22-24 (Pa. 1970); Commonwealth v. Compel, 344 A.2d 701, 702-03 (Pa. Super. Ct. 1975). See also Commonwealth v. Sleighter, 433 A.2d 469, 471 (Pa. 1981).

The Thomas case bears a striking resemblance to the facts at hand. When Merkle removed the art supplies from the supply closet and decided to donate them to the North Hills Community Center, she too did so without "felonious intent." Indeed, she believed that as an art teacher, she had

21

discretion to discard property she believed to be useless or give it to a non-profit institution that might possibly use it. In other words, she believed she had the District's implied consent to dispose of the property under these circumstances and "that she had the right" to do what she did. The School Defendants do not dispute this perception of Merkle's mental state at the time she removed the art supplies. Thus, based on the undisputed facts, Merkle cannot be said to have committed the crime of theft by taking.

The dissent is concerned that under the majority's view, employers will be reluctant to bring criminal proceedings against an employee even when the employee is found violating the criminal law. Concurrence and Dissent at 30–32. We believe this fear is groundless. An employer incurs no risk of a suit for malicious prosecution when the employer has probable cause to believe that its employee had committed a criminal violation. Here, however, the employer never had cause to find a criminal violation, because it knew that Merkle acted without criminal intent. The dissent assumes that Merkle committed a criminal violation, an assumption that is negated by the facts, the circumstances, and the law.

Finally, Merkle claims that as to the School District and Dr. Brown, their actions willfully and recklessly caused injury to her "good name, reputation, honor and integrity," in which she had a liberty interest under the Fourteenth Amendment. Specifically, she points to (1) Dr. Brown's report to the Chief of Police that Merkle had been caught loading District property into her car without authorization, and noting his concern that this had been going on for some time, and (2) the District's statement to the local newspaper regarding the Merkle prosecution claimed that the art supplies were valuable and usable to the District, and described the District as "the party offended against," but omitted mention of Merkle's explanation that she believed the supplies were useless and unnecessary to the curriculum, and that she intended to donate them to the North Hills Community Center. (Appellant's Br. at 33–34).

This court has warned against "equat[ing] a state defamation claim with a cause of action under section 1983

22

predicated on the Fourteenth Amendment." See Kelly v. Borough of Sayreville, 107 F.3d 1073, 1078 (3d Cir. 1997). Thus, the Fourteenth Amendment does not protect injury to reputation alone, Paul v. Davis, 424 U.S. 693, 701–10 (1976); Clark v. Township of Falls, 890 F.2d 611, 619 (3d Cir. 1989). However, Merkle may show that her Fourteenth Amendment rights were violated if the harm to her reputation occurred while she was being deprived of another constitutional right. See Ersek v. Township of Springfield, 102 F.3d 79, 83 n.5 (3d Cir. 1996); Robb v. City of Philadelphia, 733 F.2d 286, 294 (3d Cir. 1984).

The district court held that, because it had dismissed all of Merkle's other constitutional claims, she could not show that any false statements by the District were made in the course of another constitutional violation. However, because we believe that there is a question of fact for a jury as to whether Brown was motivated by Merkle's exercise of her First Amendment right of speech to initiate a baseless prosecution, she may be able to adduce evidence of an injury to her reputation while in the exercise of a constitutional right. The truth or falsity of several of the allegedly defamatory statements identified by Merkle are disputed issues of fact and these too are questions for a jury. See Ersek, 102 F.3d at 84 & n.7. In light of our determination that it was error for the district court to grant the motion of the District and Dr. Brown for summary judgment on the First Amendment claim, the disposition of Merkle's claim of injury to her reputation will also be reversed and remanded.

The district court alternatively held that Superintendent Brown was entitled to qualified immunity for his action. Government officials performing discretionary functions . . . are shielded from liability for civil damages insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1992). A defendant is entitled to qualified immunity if reasonable officials in the defendant's position at the relevant time "could have believed, in light of clearly established law, that their conduct comported with established legal standards." Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 726

23

(3d Cir. 1989), cert. denied, 493 U.S. 1044 (1990). The parties do not dispute that the relevant law was clearly established at the time of Brown's actions. Thomas, who first reported the removal of the supplies, never suggested prosecution or that Merkle's conduct amounted to theft. Similarly, Coleman, the business manager, considered it a matter merely requiring Board approval.

An objective and reasonable assessment under the circumstances disclosed at most a mistake in judgment or probable exercise of excessive authority, but not a criminal intent to steal. The Chief of Police and Detective Hahn both raised warning lights for criminal prosecution; Brown, however, was determined to arrest and to persist in the prosecution. In view of our analysis that Merkle's version of the facts supports the proposition that Brown, and through him the District, maliciously prosecuted Merkle in retaliation for her protected First Amendment activities, it follows that Brown is not entitled to qualified immunity. Viewed objectively, the act of arrest followed by the refusal to withdraw the charges was unreasonable.

III.

Conclusion

Accordingly, the order of the district court granting summary judgment to the Police Defendants and to Margaret Thomas, the school principal, will be affirmed. The order granting summary judgment to the School District and its superintendent, Dr. Clair Brown, Jr., and alternatively granting Dr. Brown qualified immunity, will be reversed and the case remanded for appropriate proceedings consistent with this opinion. Each side to bear its own costs.

GREENBERG, Circuit Judge, concurring and dissenting.

I concur in and join the majority opinion to the extent that it affirms the order of the district court granting summary judgment but to the extent that it reverses, I dissent. I think that it is perfectly plain that Merkle was the only person who did anything wrong in the matters involved in this litigation. Under 18 Pa. Cons. Stat. Ann.S 3921(a) (West 1983), "[a] person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." It is clear that Merkle, without any authority, took 144 unopened boxes of Crayola Crayons belonging to the School District and was loading them in her car when Thomas interrupted her. Indeed, even on this appeal Merkle acknowledges that "Prior to this incident, [she] was unaware of any official procedure applicable" to the disposal of property. Br. at 5-6. Thus, surely she should not have taken the property, as she could not take her lack of knowledge of a procedure on how to dispose of property to mean that she had a license to determine what property was unneeded and to whom the district should donate it.

In this regard, I emphasize the following. In Merkle's brief she never contends that she asked the School Defendants for permission to donate the crayons to the North Hills Community Center before she removed them. Rather, she only contends that no other teacher at the Sandy Run Middle School expressed interest in the crayons. See br. at 5. Thus, she could not have known whether other schools in the district could have made use of the crayons, perhaps in a lower grade level than the levels in the middle school where she taught. Moreover, when Merkle removed the crayons she could not know whether the School District, if it determined to dispose of them, would have considered the community center as the appropriate donee. Rather, for all she knew, the School District would have preferred to give away its property to a different recipient.

It is true, of course, that when Thomas interrupted Merkle when she was taking the property she returned it to the school, and the majority makes much of this conduct. But I really do not understand why it does so. After all, what else could Merkle have done? What the majority does

25

not consider is that except for the fortuitous circumstance that Thomas observed her taking the crayons, the School Defendants never might have been aware that she took them. Of course, Merkle already had completed the offense before she returned the property as she unlawfully took or exercised control over it with the admitted intent to deprive the School District of it. In the circumstances, there is not even a scintilla of doubt but that the School Defendants had probable cause as a matter of law to believe that Merkle committed a crime when she removed the crayons which Merkle could not erase with her after-the-fact conduct and explanations. See Gottesfeld v. Mechanics and Traders Ins. Co., 173 A.2d 763, 766 (Pa. Super. Ct. 1961) ("Larceny, by definition, is taking or carrying away the property of another with intent to convert it to the use of someone other than the owner without his consent.").

The majority cites Thomas v. Kessler, 5 A.2d 187, 188 (Pa. 1939), for the principle that "[i]t has been repeatedly held that when one takes property under a claim of right, even though mistaken, larceny is not committed." That principle, however, is not applicable here as Merkle, unlike the plaintiff in Thomas, never has made"a claim of right" to the property involved. Quite to the contrary she always has acknowledged that the School District was the owner of the crayons. She only has claimed that she had the power to give away the property. Thus, the facts here, rather than bearing "a striking resemblance" to those in Thomas, as the majority suggests, maj. op. at 21, plainly are distinguishable from those in that case. The same is true of the other cases the majority cites as they, too, were concerned with the meaning of "claim of right." Therefore none of the cases the majority cites can detract from the circumstance that the School Defendants had probable cause to believe that Merkle was guilty of a theft.

I recognize, of course, that the Court of Common Pleas of Montgomery County on Merkle's habeas corpus petition found the facts failed to show by the preponderance of the evidence that Merkle engaged in criminal activity, and suggested that if she was at fault that the matter be handled administratively. Nevertheless that finding and suggestion cannot change the circumstance that the School

Defendants had probable cause to believe that she committed a theft. Similarly, the view of the majority that the matter should have been handled administratively does not change the fact that the School Defendants had probable cause to believe a crime had been committed.[1]

Where, then, are we? Merkle contends that the district court "incorrectly determined the issue of probable cause, since the facts in dispute created an issue solely reserved for jury resolution." Br. at 10. Obviously, the majority agrees. But there is no issue of fact for whatever Merkle's state of mind, the School Board had probable cause to believe that she had committed an offense. I emphasize in this regard that Merkle was donating unopened boxes of crayons to the community center, items which surely had some value for Merkle was not throwing them away. Thus, even without regard for the enhanced requirements under Albright v. Oliver, 510 U.S. 266, 114 S.Ct. 807 (1994), for a 42 U.S.C. S 1983 malicious prosecution action, see Gallo v. City of Philadelphia, 161 F.3d 217, 221–22 (3d Cir. 1998), the malicious prosecution aspect of this case should fail.[2]

_____

[1]. Considering the rather minor nature of the offense here, I agree that an administrative disposition of the matter would have been appropriate. But my view no more than that of the Common Pleas Court or majority can detract from the fact that the School Defendants had probable cause to believe that Merkle had committed a criminal offense.

[2]. Merkle correctly points out that in Gallo  we indicated that in a section 1983 malicious prosecution action a plaintiff might not be required to establish all of the elements of the common law tort of malicious prosecution. See Gallo, 161 F.3d at 222 n.6; but see Hilfirty v. Shipman, 91 F.3d 573, 579 (3d Cir. 1996) ("In order to state a prima facie case for a section 1983 claim of malicious prosecution, the plaintiff must establish the elements of the common law tort as it has developed over time."). Nevertheless, inasmuch as the majority includes an analysis of whether the School Defendants had probable cause to initiate the criminal proceedings and the parties have briefed that issue, I, too, will analyze the case on that basis. In any event, I believe that ultimately the courts will hold that a person will not have committed the constitutional tort of malicious prosecution if he had probable cause to initiate the criminal proceedings leading to the civil action. On the other hand, however, depending on the facts developed, it would be possible to sustain a First Amendment retaliation case predicated on the institution of criminal proceedings even though the defendant had probable cause to initiate the proceedings.

27

Merkle also argues that the School Defendants instituted criminal and administrative proceedings against her in retaliation for her exercise of her First Amendment rights. Under Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568 (1977), where, as here, a plaintiff accuses public actors of violating her First Amendment rights by retaliating against her by reason of First Amendment protected activity, a shifting burden of proof analysis is required. First, the plaintiff must demonstrate that she has engaged in First Amendment protected activity. Undoubtedly Merkle did so. Then the plaintiff must demonstrate that the defendants took an adverse action against her. Undoubtedly, Merkle satisfied her burden on this point as well for the School Defendants gave information to the police that resulted in her criminal prosecution and they suspended her as a teacher.

But it is not enough for a plaintiff to show merely that she engaged in First Amendment activity and that she subsequently suffered an adverse action from the public actors who might have taken exception to that activity. Rather, the plaintiff must demonstrate that her constitutionally protected conduct was a "substantial" or "motivating factor" in the defendant's conduct. Id. at 287, 97 S.Ct. at 576. Only if the plaintiff satisfies this initial burden does the defendant have the burden to demonstrate by a preponderance of the evidence that it would have taken the same action in the absence of the protected conduct. Id.3

_____

3. Our cases indicate that a public employee's claim for a protected activity, in this case free speech, should be analyzed in three steps: (1) was the activity protected; (2) was the protected activity a substantial or
motivating factor in the alleged retaliatory action; (3) would the defendants have taken the same action even in the absence of the protected activity. See Fultz v. Dunn, 165 F.3d 215, 218 (3d Cir. 1998), cert. denied, 119 S.Ct. 2342 (1999); Latessa v. New Jersey Racing Comm'n, 113 F.3d 1313, 1319 (3d Cir. 1997); Watters v. City of Philadelphia, 55 F.3d 886, 892 (3d Cir. 1995). The plaintiff has the burden on the first two issues and if the third is reached the defendant has the burden on it. I have analyzed the case as including four steps as the second step includes two elements: did the defendants take an action adverse to the public employee and, if so, was the motivation for the action to retaliate against the employee for the protected activity.

28

In fact there is no evidence that Merkle's First Amendment activity was a substantial or motivating factor in the School Defendants' conduct in notifying the police as to what she did or in suspending her. In this regard, I first point out that it is significant that Merkle and not the School Defendants set the events in motion which led to the criminal charges and the suspension. Thus, it was Merkle who made the determination to take the crayons. And it was Merkle who decided when the crayons would be taken and to whom she would give them.

Moreover, there is no direct evidence that Merkle's protected activity prior to the crayon incident was a substantial or motivating factor in the School Defendants' actions leading to her prosecution or suspension. Accordingly, unless a court will permit an inference to be drawn that an employer's adverse action against an employee can be regarded as retaliatory merely because the employee has engaged in antagonistic First Amendment activity, we must affirm. But by drawing such an inference, we effectively will eliminate the plaintiff 's burden under Mt. Healthy v. Doyle to demonstrate that the constitutionally protected activity was a "substantial" or"motivating factor" in the defendants' adverse action. Instead, when an employee engages in First Amendment activity and suffers an adverse employment action, we immediately will shift to the defendants the burden to demonstrate that they would have taken adverse action notwithstanding the employee's having engaged in First Amendment activity.

I recognize that Merkle sets forth several reasons why she thinks that she can demonstrate that the School Defendants initiated the criminal proceedings in retaliation for her free speech activities, but she merely demonstrates that they may have had animosity toward her in part for reasons unrelated to her First Amendment activity in issue here. Br. at 30-31.4 In a sense, then, her argument is

_____

4. In her brief Merkle indicates that "[a] jury could give credence to the fact that [she] was subject to disparate treatment throughout the school year -- subsequent to her speech at the board meeting and continued advocacy before the principal." Br. at 31. In support of this contention she cites her deposition. See app. at 139-40. There she testified to matters completely discrete from the First Amendment activity implicated here such as that she was "written up" because of time she spent talking with a new student, she left work early, and she did not like an "absurd schedule" that the school assigned her.

counterproductive. It is critical in considering this point to recognize that a section 1983 retaliation case hinges on the plaintiff demonstrating that her First Amendment activity motivated the employer's adverse action. Thus, for example, if an employer's motive in instituting criminal proceedings against a teacher was that it thought that she was a poor teacher it would not be liable to her in a section 1983 retaliation case.[5]

The closest that Merkle comes to demonstrating that she was prosecuted by reason of engaging in First Amendment activities is her charge "that participating teacher Nancy Markowich (who initially suggested the crayon donation) was not disciplined nor made subject to criminal prosecution -- bolstering the claim of an improper motivation." Br. at 31. But her argument here clearly fails as Markowich was not involved in the actual removal of the property and indeed was not even at the school when Merkle removed it. Thus, Merkle cannot establish the nexus between the school district taking action adverse to her and her First Amendment activity by demonstrating that Markowich received disparate and more favorable treatment.

I make one final point with respect to the retaliatory motivation issue. In Mt. Healthy v. Doyle, the Court said:

> The constitutional principle at stake is sufficiently vindicated if such an employee is placed in no worse a position than if he had not engaged in the conduct. A borderline or marginal candidate should not have the employment question resolved against him because of constitutionally protected conduct. But that same candidate ought not to be able, by engaging in such conduct, to prevent his employer from assessing his performance record and reaching a decision not to rehire on the basis of that record, simply because the protected conduct makes the employer more certain of the correctness of its decision.

429 U.S. at 285-86, 97 S.Ct. at 575. More recently, in

_____

5. While it might be liable on some other basis no such issue is raised here.

30

recognition of the type of concern expressed in Mt. Healthy v. Doyle, we indicated as follows:

> We also make the following observation with respect to performance evaluations. While it is possible that a manager might make a poor evaluation to retaliate against an employee for making an EEOC charge, still it is important that an employer not be dissuaded from making what he believes is an appropriate evaluation by a reason of a fear that the evaluated employee will charge that the evaluation was retaliatory. In this regard, we are well aware that some employees do not recognize their deficiencies and thus erroneously may attribute negative evaluations to an employer's prejudice. Accordingly, in a case like this in which the circumstances simply cannot support an inference that the evaluations were related to the EEOC charges, a court should not hesitate to say so.

Shaner v. Synthes (USA), 204 F.3d 494, 505 (3d Cir. 2000).

The concern the Supreme Court expressed in Mt. Healthy v. Doyle and that we expressed in Shaner v. Synthes is implicated here. Why should the School Defendants have been intimidated by the fact that Merkle had engaged in First Amendment activities in their response when they discovered her illegally removing School District property? The lesson that the majority is sending to employers is clear: even when you find your employee violating the criminal law, be reluctant to bring criminal proceedings against her if she has engaged in First Amendment activity, lest you be faced with a retaliation claim. Unfortunately, the lesson to employees is equally clear: make sure that you engage in First Amendment activity in relation to your employment in a manner calculated to antagonize the supervisory personnel, because if you do so you later will be able to charge that any action the employer takes adverse to you is in retaliation for that activity. Moreover, you should engage in antagonistic First Amendment activity for the further reason that if you do so you may anticipate that your employer will tolerate misconduct on your part that it would not tolerate from employees not similarly insulated from disciplinary proceedings. Furthermore, the employer will favor you with respect to promotions and the

31

emoluments of your position because if it does not do so you may bring retaliation charges against it.

The majority believes that my view that its opinion will make employers reluctant to bring criminal proceedings when an employee is found violating the law is "groundless." Maj. op. at 22. It suggests that the School Defendants "never had cause to find a criminal violation, because it knew that Merkle acted without criminal intent." Id. at 22. Thus, the majority believes that my dissent "assumes that Merkle committed a criminal violation," id., an assumption that the majority believes "is negated by the facts, the circumstances, and the law." Id .

In fact, my position is predicated on the plain circumstance that the School Defendants had probable cause to believe that Merkle committed a crime and is not dependent on whether or not she in fact committed a criminal act. There is simply no doubt but that the School Defendants had cause to believe that Merkle was exercising unlawful control over its property with an intent to deprive the School District of the property. Obviously, the mere fact that Merkle was not convicted does not mean that the School Defendants did not have probable cause to institute the criminal proceedings. After all, if the termination of the criminal proceedings in favor of the plaintiff, i.e., the defendant in the criminal proceedings, meant that the criminal proceedings necessarily had been instituted without probable cause then there would be no reason for the courts to require the plaintiff to prove the absence of probable cause in a malicious prosecution action as such proof would add nothing to the requirement that the criminal proceedings be terminated in the plaintiff 's favor. In point of fact the majority opinion will come to have the exact chilling effect on employers that I anticipate and attorneys representing employers will read the majority opinion and advise employers against bringing criminal charges even when they have probable cause to do so.

While some people may take umbrage at my suggestion as they will say that an honest and conscientious employer always will be able to justify its actions, I live in the real world and I believe that employers will take action to avoid litigation which, after all, at best is expensive and time

32

consuming. In this regard I point out that even a successful defendant in a retaliation action probably will not be able to recover its legal expenses for its defense. See EEOC v. L.B. Foster Co., 123 F.3d 746 (3d Cir. 1997) (Title VII action). Moreover, litigation is risky so that even the best intentioned employer may seek to avoid a potential judgment.

I see no Fourteenth Amendment liberty interest implicated here. In her brief Merkle explains that the School "District's statement certainly could be read in such a manner that would lead a reader to believe that a theft had, in fact, occurred." Br. at 34. Her problem with this point is that the School Defendants had probable cause to believe that such was the case. Moreover, I am unaware of anything in the dignified and restrained public statement of the School District reprinted in the appendix which was not true. See app. at 37-38. In fact, the School District set forth the objective facts and then indicated that the police were called to investigate, "and as a result of the investigation, Detective Jack Hahn filed a criminal complaint charging Lou Ann Merkle with theft, receiving stolen property and criminal attempt at theft." Thus, it quite escapes me to understand how the School Defendants infringed Merkle's liberty interest. Indeed, it is a sensational irony that the majority in a First Amendment case allows an action predicated primarily on the School Defendants' truthful statements about a matter of public interest to go forward against them. Finally, Dr. Brown has qualified immunity because he did not violate any constitutional right of Merkle and surely he could have reasonably believed that inasmuch as she was engaged in a theft of school property she could be prosecuted. See In re City of Philadelphia Litig., 49 F.3d 945, 960-61 (3d Cir. 1995).

I close with the following comment. While I can understand the majority's belief that Merkle was treated harshly, the precedent that it sets will come back to haunt this court. Its conclusions with respect to probable cause and infringement of Merkle's liberty interests simply are not justified.

For the reasons that I state herein, I dissent from the majority opinion to the extent that it reverses. In all other respects I join its opinion.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

34