

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-30-2002

# Meyers v. Wolkiewicz

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-1005

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Meyers v. Wolkiewicz" (2002). *2002 Decisions.* Paper 685.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/685

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 02-1005

———————

ANDRE MEYERS,

Appellant

v.

THADDEUS WOLKIEWICZ;
FRED BUCK;
BERNARD MARTIN;
WILLIAM KELHOWER;
MICHAEL HARVEY;
BRIAN PETERS;
TIMOTHY BROOKS,
INDIVIDUALLY AND IN THEIR
OFFICIAL CAPACITIES AS CITY OF
PHILADELPHIA POLICE OFFICERS

———————

On Appeal from the Untied States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 00-cv-05750)
District Judge: Hon. Lowell A. Reed, Jr.

———————

Submitted Under Third Circuit LAR 34.1(a)
September 24, 2002

Before: BARRY, AMBRO and COWEN, <u>Circuit Judges</u>

(Filed: October 30, 2002)

---

OPINION

---

COWEN, Circuit Judge

Plaintiff/Appellant Andre Meyers appeals from the District Court's December 7, 2001 judgment in favor of Defendants/Appellees Detective Thaddeus Wolkiewicz, Fred Buck, Bernard Martin, William Kelhower, Michael Harvey, Brian Peters, and Timothy Brooks. We will affirm.

I.

On November 17, 1999, Philadelphia Police officers arrested Meyers pursuant to an arrest warrant for the armed robbery of three business establishments in Philadelphia: (1) Save A Lot Market, 48th Street and Snyder Avenue, on February 7, 1999; (2) Hammerheads Bar & Grill, 3517 Cottman Avenue, on May 8, 1999; and (3) Striped Bass Restaurant, 1500 Walnut Street, on July 18, 1999. An affidavit of probable cause, signed by Wolkiewicz, was submitted in support of the arrest warrant application.

Before the issuance of this arrest warrant, Andre Wilson was arrested as one of the robbers. Thomasine Jones, Wilson's former girlfriend, went to the Philadelphia Police in order to file assault charges against Wilson, and she provided statements regarding the three robberies to the police on September 27, 1999, October 5, 1999, and October 11, 1999. Jones implicated both Wilson and another individual, named Andre but known as Dre, as the perpetrators of the three robberies. From a mugshot, Jones identified Dre as

2

Meyers. Jones stated that she had known Meyers since the third grade. She claimed that she had seen Meyers wear a yellow Spectaguard security guard uniform on two occasions and that he owned a light silver Ford Taurus. Meyers asserts that he never worked as a security guard, and he further claims that he neither owned nor drove a Ford Taurus.

According to Jones, Wilson told her that, together with Dre, he robbed both the Save A Lot and Hammerheads. She specifically said that Wilson put the bag containing the money from the Hammerheads robbery in her bedroom and that Meyers eventually took this bag. Based on statements by Wilson, Jones also implicated Meyers as a participant in the Striped Bass robbery.[1] She identified Dre and Wilson from the surveillance tape of the Striped Bass robbery.

Eyewitnesses corroborated Jones's account in several significant respects. Jones informed the police that Wilson told her that he wore a mask during the Hammerheads robbery and ordered the witnesses into the freezer. Several witnesses at Hammerheads stated that they were told to go into the freezer and saw that one of the robbers was wearing a mask. Wilson also told Jones that he hit a woman at the Stripped Bass with his gun. Laura Russell, a Striped Bass employee, informed the police that one of the robbers struck her in the face with a gun after she screamed.

---

[1] Jones originally stated that Wilson and "Dre" robbed a downtown office building around Sixteenth or Seventeenth Streets. She apparently corrected herself, stating that she "thought it was an office building." App. at 116. The details she provided are consistent with the location of the Striped Bass and the circumstances of the robbery.

Kenyatta Johnson, a former Hammerheads and Striped Bass employee, made statements to the police on October 14, 1999 and October 20, 1999. Johnson, Wilson's cousin, claimed that both Wilson and Andre Williams told him that they robbed Hammerheads. Johnson was shown a photograph of Meyers, and he specifically denied that Meyers was involved in the Hammerheads robbery. When confronted with Johnson's assertion, Jones said that Johnson was lying because she had seen Meyers take the bag of money from the Hammerheads robbery. Johnson initially told the police about a visit to the Striped Bass on the Sunday before the robbery to see some former co-workers, but he subsequently admitted that he had lied about the nature of his visit. He confessed that he actually planned to rob the Striped Bass with Wilson and Williams and went to the restaurant in order to determine the number of people on the premises. They did not rob the Striped Bass on Sunday because Johnson was asked to leave. Johnson did not know who actually committed the Striped Bass robbery. In a statement given on October 19, 1999, Williams, a former guard employed by Honor Guard Security, admitted to two other robberies but did not confess to the three robberies for which Meyers was arrested.

The affidavit in support of the arrest warrant, while detailing the statements of Jones and several eyewitnesses, failed to disclose the accounts of Johnson and Williams. Johnson was arraigned, but the Commonwealth of Pennsylvania eventually withdrew the charges against him. Meyers brought this action under 42 U.S.C. § 1983, alleging that defendants, named in both their individual and official capacities, violated the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and asserting several state

4

law claims. Defendants provided to Meyers a copy of the surveillance videotape from which Jones identified Meyers, explaining in a cover letter that the Philadelphia District Attorney's Office could not locate the original. Meyers also attempted to depose Jones, but she failed to appear at the scheduled times.

The District Court granted defendants' motion for summary judgment. In granting summary judgment as to Meyers's constitutional claims, the District Court concluded that no reasonable jury could find that defendants lacked probable cause to arrest Meyers, made a false statement in the affidavit of probable cause, or omitted any material fact from the affidavit. It further rejected Meyers's argument that the alleged failure of defendants to produce Jones for a deposition prevents them from relying on her statements to the police. The District Court similarly found that the defendants' alleged failure to provide the original surveillance tape of the Striped Bass robbery did not implicate the presumption that this tape would exonerate Meyers. The District Court also granted summary judgment regarding Meyers's state law claims on grounds of immunity. Meyers filed a timely notice of appeal.

II.

We have jurisdiction over this appeal pursuant to our power to review final judgments under 28 U.S.C. § 1291.  Our review of the grant of a motion for summary judgment in favor of a defendant is plenary, *see, e.g.*, *Merkle v. Upper Dublin Sch. Dist.,* 211 F.3d 782, 788 (3d Cir. 2000), and we conduct the same analysis as the District Court under Federal Rule of Civil Procedure 56(c), *see, e.g., Boyle v. County of Allegheny Pennsylvania*, 139 F.3d 386, 393 (1998).  Summary judgment is appropriate "where there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  *Merkle*, 211 F.3d at 788 (citing Fed. R. Civ. P. 56(c)).  All facts must be viewed in the light must favorable to the non-moving party, and this party is entitled to the benefit of all reasonable inferences.  *See, e.g., id.*

Meyers contends that genuine issues of material fact exist regarding whether defendants lacked the probable cause necessary for a proper arrest under the United States Constitution.  According to Meyers, the District Court was also in error when it found that defendants had produced the actual surveillance tape of the Striped Bass robbery.  He contends that defendants' alleged failure to produce Jones and an affidavit or equivalent evidence showing that Meyers was depicted on the surveillance tape raises a "presumption that the evidence, if produced, would have been favorable to [Meyers.]."[2]  Meyers's Br. at 8.

---

[2]  Meyers does not challenge the District Court's grant of summary judgment with respect to his state law claims.

6

The District Court comprehensively examined Meyers's probable cause allegations in a step-by-step analysis. The Fourth Amendment to the United States Constitution generally prohibits a police officer from arresting a citizen without probable cause. *See, e.g., Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995). The probable cause ordinarily necessary for a constitutionally proper arrest exists "when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Id.* at 483 (citation omitted). The District Court correctly concluded that the affidavit of probable cause clearly established probable cause on its face. However, Meyers's claims do not implicate the facial sufficiency of this affidavit of probable cause, and they instead raise the question of whether defendants knowingly or recklessly disregarded the truth in seeking the arrest warrant.

In *Wilson v. Russo*, 212 F.3d 781 (3d Cir. 2000), we stated:

> [A] plaintiff may succeed in a § 1983 action for false arrest made pursuant to a warrant if the plaintiff shows, by a preponderance of the evidence: (1) that the police officer "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;" and (2) that "such statements or omissions are material, or necessary, to the finding of probable cause."

*Id.* at 786-87 (citing *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997)). Applying this standard, the District Court found that, while defendants may have knowingly omitted exculpatory evidence from the affidavit, no reasonable jury could conclude that such omissions were material to the finding of probable cause. The District Court further

7

concluded that defendants did not make any false assertion with a reckless disregard for the truth. The District Court did not err in reaching these conclusions.

The omission inquiry is the most significant given the circumstances of this case. There admittedly are genuine issues of material fact as to whether defendants omitted facts from their warrant application knowingly or with a reckless disregard for the truth. A police officer omits a fact with such disregard when the officer "withholds a fact in his ken that 'any reasonable person would have known that this was the kind of thing the judge would wish to know.'" *Id.* at 788 (citation omitted). The affidavit of probable cause failed to disclose the statements previously provided by Johnson and Williams. The District Court correctly noted that the failure to include any reference to Williams's statements was not an omission for purposes of this probable cause analysis because Williams never confessed to the three robberies for which Meyers was arrested. Johnson, however, informed the police that both Williams and Wilson told him that they perpetrated the Hammerheads robbery. He was shown a picture of Meyers and specifically denied that Meyers was involved in the Hammerheads robbery. He also said that he, Wilson, and Williams had intended to rob the Striped Bass but were forced to abandon their plan when he was asked to leave the premises. These assertions relating to two of the three robberies at issue were apparently matters that a judge would have liked to know in considering whether to issue an arrest warrant.

Any knowing or reckless omission must also be material or necessary to a finding of probable cause in order to provide a basis for a successful claim of false arrest. In order to

ascertain the materiality of omissions, we "insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause." *Id.* at 789 (citing *Sherwood*, 113 F.3d at 399). The inculpatory evidence is then weighed against the exculpatory evidence available to the police officer. *Id.* at 791.

In this case, the District Court correctly concluded that any exculpatory evidence provided by Johnson, when compared with the inculpatory statements of Jones, did not undermine the finding of probable cause. Jones, who claimed she had known Meyers since the third grade, implicated him as a perpetrator of the Save A Lot, Hammerheads, and Striped Bass robberies. She identified Meyers from both a mugshot and the surveillance tape of the Striped Bass robbery. The police also confronted Jones with Johnson's statement about the Hammerheads robbery, and she explicitly denied his claim, reiterating that she had actually seen Meyers take the bag of money from the Hammerheads robbery. Jones's statements were actually corroborated in important respects by eyewitnesses. An affidavit including Johnson's statements would still have established probable cause, and any omission from the affidavit therefore was not material.

Defendants are also entitled to judgment as a matter of law with respect to Meyers's apparent claim that they made knowingly or recklessly false assertions in the affidavit of probable cause. A police officer makes an assertion with a reckless disregard with the truth "when 'viewing all the evidence, [the officer] must have entertained serious doubts as to the truth of this statements or had obvious reasons to doubt the accuracy of the information he reported." *Id.* at 788 (citation omitted). We agree with the District Court

9

that Meyers has failed to present evidence indicating that defendants had serious doubts as to the truth of Jones's statements or serious reasons to doubt their accuracy. Johnson's statements, while partially inconsistent with Jones's account, were insufficient to raise such doubts or reasons. In fact, Jones was apparently more credible than Johnson, who, after lying to the police, admitted that he had planned to rob the Striped Bass with Wilson and Williams. Jones did tell the police that Meyers drove a Ford Taurus and that she had seen him wearing a yellow Spectaguard security guard uniform. Meyers denies that he ever owned a Ford Taurus or worked as a security guard, and he notes that Williams admitted to the police that he was a security guard. At the time they obtained the arrest warrant, defendants were unaware that Meyers neither owned a Ford Taurus nor worked as a security guard. *See, e.g., Merkle,* 211 F.3d at 790 n.8 (stating that police officer "was not required to undertake an exhaustive investigation in order to validate the probable cause that, in his mind, already existed") (citations omitted). Furthermore, the mere fact that Williams worked as a security guard does not mean that Meyers never wore a security guard uniform.

The District Court therefore correctly held that defendants were entitled to the entry of summary judgment based on both the omission and assertion prongs of the probable cause analysis. Meyers's final argument is based on alleged discovery violations. Meyers contends that defendants failed to produce both Jones and the surveillance videotape of the Striped Bass robbery viewed by Jones. He apparently invokes the spoliation doctrine and

10

contends that defendants' alleged discovery failures give rise to an evidentiary inference in his favor.

Meyers failed to invoke the spoilation doctrine before the District Court or even cite any authority in support of his assertion regarding defendants' alleged failures of production. Even considering the merits of Meyers's argument, it is well established that any inference only arises when the evidence was "within the party's possession or control" and when the party actually suppressed or withheld the evidence. *Gumbs v. Int'l Harvester, Inc.,* 718 F.2d 88, 96 (3d Cir. 1983). There is no indication that defendants had any control over Jones or were responsible for her failure to appear for a deposition. Defendants also furnished Meyers with a copy of the surveillance videotape of the Striped Bass robbery, explaining that the Philadelphia District Attorney's Office was unable to locate the original tape. Defendants apparently made a good faith effort to obtain the original videotape. We therefore conclude that this final argument is without merit.

## IV.

For the foregoing reasons, we will affirm the judgment of the District Court entered on December 7, 2001.

_____

TO THE CLERK:

Please file the foregoing opinion.

                    /s/ Robert E. Cowen
United States Circuit Judge