

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-19-2008

# Morrison v. Schultz

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1339

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Morrison v. Schultz" (2008). *2008 Decisions*. Paper 1415.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1415

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NON-PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 07-1339

STEVEN CORY MORRISON,

Appellant

v.

SCOTT SCHULTZ, OFFICER; CITY OF
READING POLICE DEPARTMENT; MARK C. BALDWIN,
DISTRICT ATTORNEY CITY OF READING; JOHN DOE,
INVESTIGATOR, DISTRICT ATTORNEY'S OFFICE CITY
OF READING; THE DISTRICT ATTORNEY'S OFFICE OF
READING, BERKS COUNTY PENNSYLVANIA, ET. AL.,
BEING SUED IN THEIR INDIVIDUAL AND OFFICIAL CAPACITY;
JOHN DOE #1,DETECTIVE; JOHN DOE #2, DETECTIVE;
CITY OF READING

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
Magistrate Judge: The Honorable Timothy R. Rice
District Court No. 04-CV-05635

_____

Argued February 12, 2008

_____

Before: SLOVITER, SMITH, and STAPLETON, *Circuit Judges*
(Filed: March 19, 2008)

Counsel:

Stephen D. Brown (argued)
Patricia A. McCausland
Dechert LLP
2929 Arch Street
Philadelphia, PA 19104
*Counsel for Appellant*

David J. MacMain
Janelle E. Fulton (argued)
Montgomery, McCracken,
Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA 19109
*Counsel for Appellees*

_____

OPINION

_____

SMITH, *Circuit Judge*:

Appellant Steven Cory Morrison ("Morrison") alleges that the defendants violated his constitutional rights by falsely arresting, falsely imprisoning, and maliciously prosecuting him without probable cause for a crime he did not commit. The police arrested and charged Morrison with possession of a prohibited offensive weapon, in violation of 18 PA. CONS. STAT. ANN. § 6105(a)(1), and he served approximately eight months in prison before one of his wife's friends confessed to being the actual culprit. The government thereafter dropped all charges. Morrison's claims turn on whether the police had probable cause to arrest and charge him with the above-noted offense. Because we agree with Magistrate Judge Rice that the police possessed probable cause, we will affirm his order granting the defendants' motion for summary judgment.[1]

I.

On December 9, 2002, Gail Schwambach ("Schwambach") contacted the Reading

_____

[1] The District Court exercised jurisdiction pursuant to 28 U.S.C. § 1331. The parties consented to jurisdiction before the Honorable Timothy R. Rice, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c)(1). We exercise jurisdiction pursuant to 28 U.S.C. § 636(c)(3) and 28 U.S.C. § 1291.

2

Police Department to report two suspicious males in an alley, one of whom she described as having a "pumper type rifle."[2] Schwambach observed the two men for approximately ten minutes, beginning when they pulled up in a green car. She eventually had a verbal exchange with one of them, whom she later identified as Morrison. She described the individual who got out of the driver's seat as approximately six feet tall and 180 pounds and the passenger as approximately five feet six inches or five feet eight inches tall and 140 pounds. As officers were en route, Schwambach called the police again to report that the two men had gotten into a green vehicle.

When Officer Scott Shultz ("Shultz")[3] arrived at the scene, he saw a green Mercury Sable that was occupied by two men. Shultz testified that the two men exited the car and fled on foot when he identified himself as a police officer and instructed them to get back into the vehicle. Shultz stated that the individual exiting from the passenger side was significantly shorter than the individual exiting from the driver's side and that he was wearing a black puffy coat and a hood on his head from a hooded shirt. He estimated that the driver was approximately five feet ten inches or six feet tall, of medium build, and likely weighed about 175 pounds. Shultz described the passenger as having "big, bushy hair, like an afro, but it was like a long afro that you don't see very often."

Shultz chased the driver when the two men exited the car. During the chase, he

---

[2]Schwambach was active in her neighborhood's crime watch program and, according to police testimony, had accurately reported criminal activity to the police in the past.

[3]There is some discrepancy in the record regarding the spelling of Officer Shultz's last name. Magistrate Judge Rice consistently referred to him as Officer "Schultz." Based upon his Affidavit of Probable Cause, we will assume for purposes of this opinion that "Shultz" is the proper spelling.

slipped and fell, at which point the driver fled behind nearby houses. Thereafter, Shultz observed a van in the area driving away at a high rate of speed. He could not see who was in the van, but nonetheless radioed a description of both the van and the individual he had been chasing.

Officer Mark Gresh ("Gresh") received Shultz's dispatch and observed a van driving on Laurel Street in Reading. According to Gresh, a black male with a gray hooded shirt exited the van and then ran between two houses located behind 719 Laurel Street. Thereafter, several officers arrived at the scene and searched 719 Laurel Street. Morrison was in the house with six other individuals. According to testimony, police suspicion focused on Morrison and Andrew Bing ("Bing"), who was also found at the house, because they matched the general physical description of the men they were looking for. Morrison is five feet, ten inches tall, and weighed approximately 160 pounds at the time of his arrest. He had a goatee and was wearing a white T-shirt and blue jeans when the police arrested him.

Officer Gresh testified that he could not identify the person who jumped out of the van and that he "thought the guy that ran from the car looked lighter, lighter-skinned." However, Gresh also testified that if he had thought Morrison was "not the guy," he would have said as much. The driver of the van, Raphael Figueroa, stated that a black male with a goatee held a gun to his head and forced him to drive the van. However, Figueroa was not able to provide a description of that individual.

Shultz was initially uncertain that Morrison was the individual that he had chased from the green car. However, he testified that after thinking about the chase in his head,

4

he became convinced that he could identify Morrison. Morrison was not wearing a black puffy coat or hooded shirt, as Shultz had seen on the individual he chased. Nonetheless, Shultz indicated that he recognized Morrison's face. Once he was able to identify Morrison, Shultz arranged for Schwambach to take part in a "showup identification," a process in which police arrange for an encounter between a witness to a crime and a detained suspect to see if the witness can make an identification.

Here, police led Morrison, Bing, and another man who was in the house outside for the showup. Bing and the third suspect, Jonathan Almodovar, were juveniles at that time. Almodovar was six feet tall, dark-skinned, and approximately 180 pounds. Some evidence suggested that Bing was handcuffed during the identification, although Bing himself disputed that was the case.[4]

After arriving at the scene, approximately 45 minutes after she first observed the two men in the alley, Schwambach identified Morrison as "the passenger that was sitting in the car that had the gun." However, she could not identify the driver. According to her subsequent testimony, Schwambach had no hesitation when she identified Morrison. After Schwambach's identification, Shultz arrested Morrison. Further investigation revealed that Morrison had previously been convicted of kidnapping and was on parole for those charges. Shultz charged Morrison with possession of a prohibited offensive weapon, in violation of 18 PA. CONS. STAT. ANN. § 908(a), and with unlawful possession

---

[4]Bing stated in his confession that he was not handcuffed during the showup. Morrison testified that Bing was indeed handcuffed. As the Magistrate Judge noted, Bing being handcuffed would likely have worked to Morrison's advantage in that it would suggest that Bing, rather than Morrison, was the actual suspect.

of a firearm by a convicted felon, in violation of 18 PA. CONS. STAT. ANN. § 6105(a)(1).

After reviewing the facts set forth in an affidavit of probable cause that Shultz prepared, a magisterial district judge approved the charges. Shultz's affidavit set forth the following:

> I was dispatched to the 400 block of Orange Street on 12/9/02 at 1326 hours relative to a complaint of two black males in an alley there acting suspiciously and one of them was carrying a pump-style gun. As I arrived on location, I received an update from the complainant that the two males had gotten into a green car in the block. I immediately spotted the car, a 1996 Mercury sable, bearing PA registration DJM-4199, which was later reported stolen, with two black males sitting in the front seats. As I was relaying the information to radio dispatch, the two started getting out of the car. I ordered them back in the car. They took off running. After a foot chase over three city blocks, I lost sight of the suspect who ran from the driver's seat of the vehicle. A large brown conversion van was seen speeding away from the area. Other officers were alerted and the vehicle was stopped a short time later. The driver, Raphael Figueroa, said the suspect pointed a gun at him and demanded he drive from the area. The suspect was let out in the 400 block of S. 7th Street. Officer Steve Gresh, who was in the area, witnessed the suspect jumping out of the van there.
>
> Through further investigation, the suspects were located at 719 Laurel Street. The original complainant, Gail Schwambach, was transported to that location and positively identified the suspect as the person in the car with the shotgun.
>
> The owner of the car the suspects ran from had returned to her car in the meantime and told officers that it had been stolen in the area of S. 9th and Franklin Streets. She gave us permission to search the vehicle and inside on the rear seat lay an Ithaca, 12 gauge, pump, shotgun with the barrel sawed off to 14 and 3/4 inches, and loaded with 4 slug, 12 gauge, shells.
>
> Further investigation revealed the suspect has been convicted on kidnapping charges in Philadelphia and is currently on parole for those charges.
>
> Based on the information received and the investigation conducted, I request a warrant for the arrest of Steven Cory Morrison.

The affidavit contained a number of omissions and ambiguous statements.

6

First, Schwambach's identification of Morrison as the passenger was inconsistent with Shultz's belief that Morrison had been the driver. Second, Shultz's description of the passenger was inconsistent with Morrison's actual appearance. Morrison was actually about five feet ten inches tall and 160 pounds, with short hair. Shultz described the passenger as short with "big, bushy" hair.[5] Third, Shultz's description of the clothing of the man he was chasing differed from Schwambach's description, and both their descriptions were different from the clothing Morrison was found to be wearing when police arrived at the house. Shultz testified that the individual he was chasing was wearing a black puffy coat and a gray hooded shirt or jacket. Schwambach testified that Morrison was wearing a black hat, an orange sweater, and jeans. At the time police found Morrison in the house, he was wearing jeans, a white shirt and a multicolored jacket.

The affidavit also contained a number of statements that are ambiguous and arguably erroneous. First, the affidavit implied that Figueroa identified Morrison as the individual who held a gun to his head in the van. Specifically, the affidavit states that "The driver, Raphael Figueroa, said the suspect pointed a gun at him and demanded he drive from the area." Similarly, the affidavit implied that Officer Gresh identified Morrison, stating that "Officer Steve Gresh, who was in the area, witnessed the suspect jumping out of the van there." Both statements are confusing because Officer Shultz used the term "suspect" to refer to Morrison specifically and more generically to describe the unidentified individuals the police were pursuing. Neither Figueroa nor Gresh were able

---

[5]Significantly, however, Shultz never identified Morrison as the passenger. In essence, this inconsistency is an extension of Shultz's belief that Morrison was the driver, rather than the passenger.

to identify Morrison, or anyone else, as the generic suspects they had encountered.

After being arrested and charged, Morrison sought to suppress Schwambach's identification. The Berks County Court of Common Pleas denied his suppression motion, reasoning that Schwambach had an opportunity to observe the individual she identified, that she positively identified him, and that the identification was not unduly suggestive. Thereafter, on June 10, 2003, Andrew Bing confessed to the crime with which police had charged Morrison and eventually made a written confession. The police dropped all charges against Morrison on or about August 20, 2003.

On January 12, 2005, Morrison filed a *pro se* Complaint asserting claims for false arrest, false imprisonment, and malicious prosecution against Shultz, the City of Reading, and a number of other defendants not relevant to this appeal. At the request of the court, Morrison's current counsel entered an appearance on Morrison's behalf. On January 2, 2007, Magistrate Judge Rice granted the defendants' motion for summary judgment. In reaching that conclusion, the court concluded that (1) the police possessed probable cause to arrest Morrison; (2) that even if the defendants did violate Morrison's constitutional rights, they were entitled to qualified immunity; and (3) that Morrison's municipal liability claim against the City of Reading, brought pursuant to *Monell v. Department of Social Serv.*, 436 U.S. 658 (1978), was without merit because (a) there was no constitutional violation; and (b) there was no evidence of deliberate indifference. On January 31, 2007, Morrison filed a timely Notice of Appeal.

II.

On appeal, Morrison argues that the Magistrate Judge erred in (1) concluding that the defendants' possessed probable cause to arrest him and (2) dismissing his *Monell* claim against the City of Reading "in the face of evidence showing that the City has a policy or custom of providing insufficient training to its officers with respect to . . . the use of identification procedures like the show up at issue here." We review the Magistrate Judge's grant of summary judgment de novo. *See Saldana v. Kmart Corp.*, 260 F.3d 228, 231–32 (3d Cir. 2001).

## A. Probable Cause

To prevail on his section 1983 claim, Morrison was required to prove that the police arrested him without probable cause. *Groman v. Township of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995). Pursuant to *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005), "[a]n arrest was made with probable cause if 'at the moment the arrest was made . . . the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense.'" *Id.* (quoting *Beck v. Ohio*, 379 U.S. 89 (1964)). Where a police officer possesses "knowledge of a credible eyewitness . . . a reasonable jury could not find that [he] lacked knowledge of sufficient facts to establish probable cause to arrest." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 790 (3d Cir. 2000).

Here, there is no dispute that Ms. Schwambach positively identified Morrison. However, Morrison contends that the identification did not provide probable cause because, at the time of arrest, Officer Shultz could not have deemed Ms. Schwambach's

9

identification as reliable. To determine whether a showup identification is reliable, courts examine the identification procedure in light of the totality of the circumstances. In particular, courts must consider: (1) the witness's original opportunity to observe the suspect; (2) the degree of attention during the initial observation; (3) the accuracy of the initial description; (4) the witness's degree of certainty when viewing the suspect at the confrontation; and (5) the lapsed time between the crime and the identification procedure. *See, e.g., Neil v. Biggers*, 409 U.S. 188, 199 (1972); *United States v. Brownlee*, 454 F.3d 131, 139 (3d Cir. 2006). These factors suggest that Schwambach's identification was reliable.

First, the record shows that Schwambach observed the suspects at a relatively close proximity for approximately ten minutes before engaging in a verbal confrontation with the individual she ultimately identified as Morrison. Additionally, the fact that she made multiple calls to the police, while she continued to observe the suspects, suggests that she was sharply focused at the time of her initial observation.[6] Schwambach's certainty that Morrison was the suspect she had observed, as well as the relatively short period of time between her initial observation and the "showup," also suggest reliability. In her deposition testimony, Schwambach stated that she was able to immediately and without

---

[6]Admittedly, the record is silent regarding the extent to which Shultz was familiar with the circumstances surrounding Schwambach's original observation of the two suspects before he arrested Morrison and utilized Schwambach's identification in his affidavit of probable cause. However, probable cause may be based on the collective knowledge of all law enforcement officers involved in an investigation. *See, e.g., United States v. Belle*, 593 F.2d 487, 497 n.15 (3d Cir. 1979) ("The collective knowledge of the investigating officers is measured in determining probable cause."). Accordingly, we presume that Shultz was aware of the circumstances of Schwambach's identification, which she had related to other police officers.

hesitation identify Morrison as the suspect she had observed.  Similarly, Schwambach's identification at the showup occurred – at most – within forty-five minutes after she first observed the two suspects.  Finally, it is significant that Ms. Schwambach was well-known to the police department as a neighborhood crime activist who had a history of providing reliable information.

Notwithstanding Schwambach's identification, Morrison argues that Shultz made multiple omissions and errors in his Affidavit of Probable Cause that collectively undermine the existence of probable cause.  In *Wilson v. Russo*, 212 F.3d 781 (3d Cir. 2000), we instructed that:

> a plaintiff may succeed in a § 1983 action for false arrest made pursuant to a warrant if the plaintiff shows, by a preponderance of the evidence: (1) that the police officer 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;' and (2) that 'such statements or omissions are material, or necessary, to the finding of probable cause.'

*Id.* at 786–87 (citation omitted).  To determine whether any such errors or omissions are "material, or necessary, to the finding of probable cause" supporting the warrant, we must ask whether the affidavit when amended to correct those misstatements or misleading omissions still provides probable cause.  *Id.* at 786–89.  We are satisfied that Shultz's affidavit provided probable cause if so corrected.

The primary "errors" that Morrison points to are two statements that imply that both Officer Gresh and Figueroa identified Morrison as one of the two individuals involved in criminal activity.  Specifically, the affidavit stated that (1) "The driver, Raphael Figueroa, said the suspect pointed a gun at him and demanded he drive from the

11

area" and (2) "Officer Steve Gresh, who was in the area, witnessed the suspect jumping out of the van there." Both statements are confusing because Officer Shultz used the term "suspect" to refer to Morrison specifically and more generically to describe the unidentified individuals the police were pursuing. The resulting language arguably suggests, incorrectly, that Figueroa and Gresh were able to identify Morrison.

Similarly, Morrison identifies a number of omissions that he contends are material to whether Shultz possessed probable cause. Specifically, Morrison notes the following facts that Shultz failed to include in the affidavit: (1) that Schwambach's identification of Morrison as the passenger was inconsistent with Shultz's belief that Morrison had been the driver; (2) that Shultz's description of the passenger was inconsistent with Morrison's actual appearance; and (3) that Shultz's description of the clothing of the man he was chasing differed from Schwambach's description and both their descriptions were different from the clothing Morrison was found to be wearing when police arrived at the house.

As an initial matter, we are not convinced that the errors and omissions that Morrison identifies were made/omitted with reckless disregard for the truth or were knowingly and deliberately false or misleading. Reading the affidavit as a whole, the "erroneous" statements seem like the result of sloppy drafting by Shultz. We need not determine that issue, however, because even making all of the changes Morrison would have us make, the affidavit still provides cause for Morrison's arrest. With regard to the two arguably erroneous statements in the affidavit, the inability of Figueroa and Gresh to identify Morrison does not detract from the reliability of Schwambach's identification

12

which, standing alone in the affidavit, is sufficient to establish probable cause.

The omissions Morrison cites pose a more interesting question. Omissions are made with knowing and deliberate or reckless disregard "if an officer withholds a fact in his ken that '[a]ny reasonable person would have known that this was the kind of thing the judge would wish to know.'" *Wilson*, 212 F.3d at 788 (internal citation omitted). Although a positive identification can be sufficient to establish probable cause, "independent exculpatory evidence or substantial evidence towards a witness's own reliability, known by the arresting officers, could outweigh the identification such that probable cause would not exist." *Wilson*, 212 F.3d at 790. Here, Morrison does cite several exculpatory facts that Shultz failed to include in the affidavit. Ultimately, however, they are insufficient to outweigh a finding of probable cause.

First, some of the omissions simply are not material. As Magistrate Judge Rice noted in his Memorandum Opinion, a reasonable jury would view any discrepancies related to what Morrison was wearing as immaterial, especially given that "Bing himself had changed out of what he was seen in by Schwambach into pajamas by the time of the showup." Similarly, we do not find the supposed "discrepancy" between Shultz's description of the passenger and Morrison's actual appearance material. Shultz identified Morrison as the driver, not the passenger, and his description of the driver matched Morrison's actual appearance.

We need not explore whether the fact that Shultz identified Morrison as the driver, whereas Schwambach identified him as the passenger, was material. Pursuant to *Wilson*, an omission is only reckless or deliberate where the information omitted was within the

13

officer's knowledge. *Wilson*, 212 F.3d at 788. Here, Shultz testified that he was unaware that Schwambach had identified Morrison as the passenger. Morrison did not provide any evidence contradicting that statement. Accordingly, Shultz's omission was not reckless or deliberate.

Additionally, while Morrison insists that Schwambach's identification was unreliable because she identified him as the "passenger," contrary to Shultz's belief that he was the "driver," the argument that this represents a conflict is based on the assumption that the police had knowledge at the time of the arrest that the "passenger" and "driver" descriptions emanated from a simultaneous viewing of the two men in the car by Schwambach and Shultz. There is no evidence, however, that the police had such knowledge at the relevant time. They thus had no way of knowing if a conflict existed. Regardless, even if we assume that a discrepancy does exist and included that information in the affidavit, we are well satisfied that probable cause nonetheless existed based upon Ms. Schwambach's identification after her face to face encounter with Morrison.[7]

---

[7]Morrison also argues that the Magistrate Judge erred in dismissing his municipal liability claim, brought pursuant to *Monell v. Department of Social Serv.*, 436 U.S. 658 (1978). Inasmuch as Morrison did not suffer any constitutional deprivation, there is no need to address whether the Magistrate Judge erred by dismissing his claim against the City.

14