**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1790
_____

JOYCE DANIELS,
as Administrator for the Estate of Mark S. Daniels,
Appellant

v.

CITY OF PITTSBURGH;
GINO MACIOCE, in his capacity as a Pittsburgh Police Officer and his individual
capacity
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No.:  2-18-cv-01019)
District Judge: Hon. Cathy Bissoon
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
February 7, 2023
_____

Before: CHAGARES, Chief Judge, SCIRICA and RENDELL, *Circuit Judges*

(Filed: March 30, 2023)

_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

RENDELL, *Circuit Judge*.

Appellant, Joyce Daniels, appeals the District Court's orders (1) granting summary judgment in favor of Appellees, the City of Pittsburgh and Pittsburgh Police Officer Gino Macioce, in her § 1983 action for the fatal shooting of her son, Mark Daniels ("Daniels"), and (2) denying Appellant's motion for additional discovery. Because we discern no error in the District Court's reasoning, we will affirm.

I.

As we write for the parties who are well-acquainted with the facts of this case, we set forth the following background only as necessary to resolve this appeal. At the outset, we note that the relevant factual background in this case is founded upon evidence adduced by Appellees. Indeed, as we explain below, Appellant's failure to offer affirmative evidence to refute the facts as established by Appellees' evidence is fatal to her case.

On February 11, 2018, City of Pittsburgh Officer Gino Macioce and field training Officer Kevin Kisow were on duty in Pittsburgh's Homewood neighborhood. While patrolling a parking lot, Officer Macioce became alarmed because, by his account, he observed a man, later identified as Daniels, acting suspiciously upon exiting a nearby convenience store. Both officers followed Daniels as he walked down the street and turned a corner.

Officer Macioce described following Daniels around the corner and encountering him "with a gun in his hand." App. at 302. Daniels raised his gun, and Officer Macioce followed suit by raising his own gun. App. at 303–04. The men fired at one another

2

"pretty simultaneous[ly]" but neither were hit. App. at 27. Daniels fled. Officer Macioce placed a "shots fired" call over the police radio, and he and Officer Kisow pursued Daniels. They spotted Daniels standing on a nearby street talking to a woman. Officer Macioce characterized this behavior as Daniels attempting to "blend in" or "play off" his having shot at the officers.

Officer Macioce repeatedly commanded Daniels to "get on the ground." App. at 27, 286–87. Daniels, with his hands stretched out in front of him, began saying, "It wasn't me. It wasn't me." App. at 27, 287. Officer Macioce continued to command Daniels to "get on the ground." App. at 287. Daniels did not comply, but instead turned, dropped his hands in front of him, and began to flee down an alley. Officer Macioce fired four shots at Daniels, one of which hit his left arm and fatally severed an artery.

In the course of an investigation, police recovered a gun in the path of Daniels's flight, as well as bullet fragments and cartridge casings matching that gun near the location of Officer Macioce and Daniels's exchange of gunfire. Officers also interviewed the firearm's registered owner who told them that she had purchased the gun for Daniels.

Appellant, as the administrator of Daniels's estate, sued Appellees under 42 U.S.C. § 1983 for using excessive force against Daniels in violation of his Fourth Amendment rights. About two months after the close of discovery, Appellant filed a motion seeking additional discovery, which the District Court denied. Appellees moved for summary judgment, which the District Court granted. The District Court concluded that Officer Macioce's use of force was reasonable under the circumstances and that he

3

was also entitled to qualified immunity because his conduct did not violate clearly established law. This timely appeal followed.

## II.

A.      Summary Judgment[1]

This Court may affirm a grant of summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When assessing a summary judgment ruling, this Court must view all facts "in the light most favorable to the non-moving party, who is 'entitled to every reasonable inference that can be drawn from the record.'" *Reedy v. Evanson*, 615 F.3d 197, 209 (3d Cir. 2010) (quoting *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000)). To defeat a properly supported summary judgment motion, the nonmovant must show a genuine dispute of material fact that requires trial by "present[ing] affirmative evidence . . . from which a jury might return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). The standard also applies for cases involving deadly force: "Just as in a run-of-the-mill civil action, the party opposing summary judgment in a deadly-force case *must point to evidence* . . . that creates a genuine issue of material fact . . . ." *Lamont v. New Jersey*, 637 F.3d 177, 182 (3d Cir. 2011) (emphasis added). Because Appellant failed to meet this burden, the District Court properly granted summary judgment for Appellees.

---

[1] The District Court had subject matter jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291. This Court exercises plenary review over a district court's grant of summary judgment. *Araujo v. New Jersey Transit Rail Operations, Inc.*, 708 F.3d 152, 156 (3d Cir. 2013).

To prevail on her § 1983 claim, Appellant must show that Officer Macioce's fatal shooting of Daniels was an unreasonable seizure proscribed by the Fourth Amendment. *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999). Because "apprehension by the use of deadly force is a seizure," the heart of the issue is whether Officer Macioce acted reasonably. *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). The Supreme Court has held that the use of deadly force is reasonable where an officer "has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Id.* at 3. We must judge the reasonableness of Officer Macioce's actions from the perspective "of a reasonable officer on the scene," cognizant of the "split-second judgments" officers must make in the face of "tense, uncertain, and rapidly evolving" circumstances. *Graham v. Connor*, 490 U.S. 386, 396–97 (1989). We must also "avoid simply accepting what may be a selfserving [sic] account by the officer[s]." *Lamont*, 637 F.3d at 182 (internal quotation marks omitted). Instead, we look to "the circumstantial evidence that, if believed, would tend to discredit the police officer[s'] story, and consider whether this evidence could convince a rational fact finder that the officer[s] acted unreasonably." *Id*. (internal quotation marks omitted).

Appellant urges that a reasonable jury could doubt the veracity of the evidence Appellees put forth to support the proposition that Officer Macioce acted reasonably. But those urgings fall short of affirmative evidence sufficient to meet Appellant's burden in opposing Appellees' summary judgment motion. *Lamont*, 637 F.3d at 182 (providing that the summary judgment standard is not relaxed in cases involving deadly force); *Estate of Smith v. Marasco*, 318 F.3d 497, 517 (3d Cir. 2003) ("[A] party opposing summary

5

judgment must present *affirmative* evidence—whether direct or circumstantial—to defeat summary judgment, and may not rely simply on the assertion that a reasonable jury could discredit the opponent's account."). The evidence Appellant challenges includes a pole camera video showing Daniels's movements after exiting the convenience store, data showing the timing and location of gunshots fired, Officers Macioce and Kisow's sworn statements recounting what happened, and ballistic evidence tying the firearm found at the scene to Daniels.

Appellant first urges that the pole camera video shows another man headed in the same direction as Daniels after he exited the convenience store and that this man *may* have been the individual who shot at Officer Macioce. But Appellant points to no evidence in the record to corroborate this assertion. Such "[s]peculation and conjecture may not defeat a motion for summary judgment." *Jackson v. Danberg*, 594 F.3d 210, 227 (3d Cir. 2010) (quoting *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 228 (3d. Cir. 2009)). By contrast, the video serves to corroborate Officers Macioce and Kisow's accounts in that it puts Daniels at the scene and shows his movements matched the officers' descriptions from the moment Daniels exited the convenience store to when Officer Macioce confronted him. *See Scott v. Harris*, 550 U.S. 372, 380–81 (2007) (reasoning that a court on summary judgment should view the facts "in the light depicted" by an unaltered videotape).

The gunshot location data similarly corroborates the officers' accounts rather than undermines them. Appellant urges that data showing Officer Macioce fired first creates a genuine issue of material fact over whether Officer Macioce's use of deadly force was

6

reasonable. But this data shows, instead, that Officer Macioce was, indeed, shot at before he fatally shot Daniels. That is, it establishes that there was an exchange of gunfire in which six shots were fired within two to three seconds. The first three shots were fired within milliseconds of each other. This evidence not only comports with Officer Maccioce's account that he and Daniels exchanged gunfire "pretty simultaneous[ly]," App. at 27, it establishes a "significant threat of death or serious physical harm to the officers." *Garner*, 471 U.S. at 3.

The Supreme Court in *Garner* explained that "if [a] suspect threatens [an] officer with a weapon . . . deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given." *Id.* at 11–12. Additionally, "[a]n officer is not constitutionally required to wait until he sets eyes upon [a] weapon before employing deadly force to protect himself against a fleeing suspect who . . . moves as though to draw a gun." *Lamont*, 637 F.3d at 183 (quoting *Thompson v. Hubbard*, 257 F.3d 896, 899 (8th Cir. 2001)). Under these precedents, Officer Macioce's conduct was reasonable as he had been shot at by Daniels earlier in the encounter, he commanded Daniels to surrender before firing, and he had no reason to believe that Daniels had discarded his weapon before Daniels turned to flee.

Appellant put forth no affirmative evidence to raise a genuine issue of material fact as to these events. Indeed, both parties' trial counsels stipulated that the woman with whom Daniels was talking before the fatal shooting was neither a reliable witness nor able to be located despite Daniels's counsel having purportedly interviewed this witness

earlier in the litigation. Thus, there is no contradictory testimony from this fact witness that would serve to challenge Officers Macioce and Kisow's accounts.

It is also undisputed that bullet fragments and cartridge cases found at the location of the exchange of gunfire matched a firearm found in the path of Daniels's flight. The Allegheny County Police Department interviewed the gun's registered owner who admitted she bought the gun for Daniels. Appellant's only countervailing argument is to question the veracity of the woman's account. But again, that argument is not buttressed by affirmative evidence that would, when viewed in the light most favorable to Appellant, give any credence to Appellant's "other shooter" theory and create a genuine issue of material fact. *Schoonejongen v. Curtiss-Wright Corp.*, 143 F.3d 120, 130 (3d Cir. 1998) ("[I]f a moving party has demonstrated the absence of a genuine issue of material fact—meaning that no reasonable jury could find in the nonmoving party's favor based on the record as a whole—concerns regarding the credibility of witnesses cannot defeat summary judgment.").

No rational juror could find that a reasonable officer on the scene lacked probable cause to believe Daniels—who had shot at the officer moments before and turned to evade apprehension—posed "a significant threat of death or serious physical injury to the officer or others." *Garner*, 471 U.S. at 3. Because Appellant failed to put forth evidence showing a genuine dispute of material fact bearing on that conclusion, the District Court properly granted summary judgment for Appellees. Therefore, we need not reach the District Court's qualified immunity analysis, which formed an alternative basis for granting summary judgment.

B. Motion for Additional Discovery[2]

The District Court did not abuse its discretion in denying Appellant's motion to extend case management deadlines to allow additional discovery. We "will not upset a district court's conduct of discovery procedures absent a demonstration that the court's action made it impossible to obtain crucial evidence." *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 778 (3d Cir. 2000) (quoting *In re Paper Antitrust Litig.*, 685 F.2d 810, 818 (3d Cir. 1982)). Appellant moved the District Court for additional discovery in January 2021, two months after the close of discovery and after the District Court had already allowed an additional 185 days of discovery. In its last order granting a discovery extension, the District Court cautioned that "no further extensions will be granted." App. at 23. We cannot say the District Court abused its discretion in failing to grant this latest extension request where it gave Appellant sufficient opportunities to seek discovery and Appellant failed to point to specific evidence discovery might uncover. *See ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 297 (3d Cir. 2012) (stating that a "District Court has considerable discretion in matters regarding . . . case management, and a party challenging the district court's conduct of discovery procedures bears a 'heavy burden'").

III.

For these reasons, we will affirm the District Court's orders.

---

[2] We review a district court's denial of discovery for abuse of discretion. *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 235 (3d Cir. 2007).