**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1175-23
            A-1176-23

DR. CHRISTINE LENTZ,
and LYNN PETROZZA,

     Plaintiffs-Respondents,

v.

DR. KATHLEEN TAYLOR,
individually and as Superintendent
of Ocean City Public School
District, OCEAN CITY BOARD
OF EDUCATION, as the
Governing Body for the Ocean
City School District, and
DFDR CONSULTING, LLC,

     Defendants,

and

COMEGNO LAW GROUP, PC,
JEFFREY R. CACCESE,
MARK G. TOSCANO,

     Defendants-Appellants.

_____

DR. CHRISTINE LENTZ,
and LYNN PETROZZA,

      Plaintiffs-Respondents,

v.

DR. KATHLEEN TAYLOR,
individually and as Superintendent
of Ocean City Public School
District, OCEAN CITY BOARD
OF EDUCATION, as the
Governing Body for the Ocean
City School District,

      Defendants-Appellants,

and

COMEGNO LAW GROUP, PC,
JEFFREY R. CACCESE,
MARK G. TOSCANO,
DFDR CONSULTING, LLC,

      Defendants.

_____

Argued April 23, 2024 – Decided May 7, 2024

Before Judges Haas and Natali.

On appeal from interlocutory orders of the Superior Court of New Jersey, Law Division, Cape May County, Docket No. L-0112-19.

Kyle L. Wu argued the cause for appellants Comegno Law Group, PC, Jeffrey R. Caccese, and Mark G.

Toscano (Margolis Edelstein, attorneys; Paul A. Carbon and Kyle L. Wu, of counsel and on the briefs).

Gina M. Roswell argued the cause for appellants Dr. Kathleen Taylor and Ocean City Board of Education (Brown & Connery, LLP, attorneys; Gina M. Roswell and Alyssa I. Lott, on the briefs).

Marc Weinberg argued the cause for respondents (Saffren & Weinberg, and Hornstine & Vanderslice, LLC, attorneys; Marc Weinberg and Buneka J. Islam, on the briefs).

PER CURIAM

These back-to-back appeals, argued together and consolidated for purposes of this opinion, have their genesis in a criminal prosecution in which plaintiff Dr. Christine Lentz[1] was acquitted of second-degree official misconduct, third-degree theft, and third-degree computer-related theft, and the resulting civil action alleging, inter alia, discrimination and malicious prosecution. That later action gave rise to the two orders under review. Specifically, defendants Dr. Kathleen Taylor and the Ocean City Board of Education (OCBOE) (collectively, BOE defendants), and their counsel, defendants Comegno Law Group, P.C., Jeffrey R. Caccese, Esq., and Mark G.

---

[1] For ease of reading, we refer to Drs. Lentz and Taylor by their surnames, intending no disrespect to their professional titles by doing so. For similar reasons, we refer to plaintiff in the singular, but acknowledge Lynn Petrozza, Lentz's domestic partner, also has asserted a per quod claim.

Toscano, Esq. (collectively, the Comegno defendants) challenge a May 11, 2023 order which granted plaintiff's motion to pierce the attorney-client privilege and compel the production of communications between the BOE defendants and Comegno defendants. They also challenge a November 2, 2023 order in which the court granted, in part, their application for reconsideration.

For the reasons that follow, we reverse, vacate both orders, and remand for proceedings consistent with this opinion. In sum, we agree with defendants the court erred in concluding plaintiff's Sixth Amendment rights were at stake in this civil action to support piercing the attorney-client privilege under State v. Mauti, 208 N.J. 519 (2012). We also address and provide guidance to the court with respect to the appropriate procedure to be applied on remand with respect to any further review of privileged documents.

I.

In late 2014 and early 2015, plaintiff, then employed by the Ocean City School District as vice principal and athletic director, served as the chair for the committee negotiating the collective bargaining agreement (CBA) on behalf of the Ocean City Administrators' Association (OCAA). At that time, defendant Taylor was the superintendent for the District, representing the OCBOE in the negotiations, and the Comegno defendants were counsel to the OCBOE.

A-1175-23

In May 2015, the Comegno defendants and Taylor began to suspect that someone on the OCAA negotiation committee had accessed Taylor's email, because the committee was privy to information which had allegedly been shared only in emails between Taylor and the Comegno defendants. Plaintiff alleges the information had been previously shared with the committee "as early as [f]all 2014." The Comegno defendants hired defendant DFDR Consulting, LLC (DFDR), a computer consulting company, to investigate the issue.

Taylor, the Comegno defendants, and DFDR reached the conclusion Taylor's email was accessed by an iPad, which was not password-protected, and which Taylor had lost in approximately October 2014. According to plaintiff, Taylor also lost a second iPad in April 2015.

The investigation also revealed, according to DFDR, Taylor's iPad was connected to Lentz's computer on January 5, 2015, and Taylor's emails were accessed around that same time. Additionally, DFDR determined other Ocean City School District staff had improperly accessed files and folders without authorization.

The following month, plaintiff maintains Taylor and defendant Toscano "pressured [her] to resign her position as [a]thletic [d]irector and remain solely

as [v]ice [p]rincipal" to "distract [her] focus as [c]hair of the [c]ommittee and undermine Lentz's position at the school." She refused.

Plaintiff alleges that in June 2015, defendant Caccese "initiated an investigation with the [p]rosecutor with the intent to harm Lentz and remove her from her position." According to plaintiff, Caccese informed the prosecutor that the Comegno defendants were investigating allegations that Taylor's school email was "unlawfully accessed without Taylor's knowledge or consent."

Subsequently, on approximately June 24, 2015, plaintiff received a letter informing her "that she was charged with the unauthorized access of Taylor's email on June 15, 2015 and was therefore suspended."[2] Plaintiff, Toscano, and Caccese met on June 26, 2015, and at that meeting, plaintiff avers Toscano and Caccese "threatened that, unless Lentz retired, effective August 1, 2015, they would initiate a tenure charges action" and seek to revoke her tenure. Plaintiff accordingly agreed to retire which, according to the complaint, she was led to believe "would resolve all of the issues [related to] her employment."

In July 2015, the BOE defendants allegedly informed plaintiff "the August 1, 2015 retirement date proposed by Caccese and Toscano was no longer an option" and she would need to tender her retirement request immediately.

_____

[2] The record before us does not identify the author of the June 2015 letter.

6

Plaintiff's subsequent attempt to rescind her retirement request was "denied by way of non-response."

The Cape May County Prosecutor began investigating plaintiff in late June 2015. According to plaintiff, "Toscano and DFDR forwarded information [to the prosecutor] that implicated only Lentz in wrongdoing but failed to provide information about other employees who were known to have unlawfully accessed the computers of Taylor and other school personnel." The information forwarded to the prosecutor included an email from Microsoft providing IP addresses from which Taylor's school email account had been accessed.

Significantly, plaintiff alleges Toscano or "someone from DFDR" deleted a portion of that email which indicated the IP addresses were "of limited value when determining the source of access or administrative changes" and Microsoft could not "guarantee the addresses logged are of the actual customer IP address." Defendants vehemently dispute purposefully deleting any portion of the email. Plaintiff further posits defendants failed to inform the prosecutor that Taylor had lost a second iPad.

In August 2015, plaintiff was indicted and charged with the second and third-degree charges previously noted. The matter proceeded to a jury trial where she was acquitted of all charges.

A-1175-23

In June 2017, plaintiff sued all defendants in the United States District Court for the District of New Jersey, and asserted claims for: violating her Fourteenth Amendment due process right under 42 U.S.C. § 1983; malicious prosecution in violation of the Fourth Amendment under § 1983; common law malicious prosecution; unlawful discrimination in violation of the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -50; conspiracy; breach of contract; tortious interference with contract; intentional infliction of emotional distress, and loss of consortium. The District Court granted defendants' motion to dismiss each of the federal claims. See Lentz v. Taylor, No. 17-04515, 2019 U.S. Dist. LEXIS 37542 (D.N.J. Mar. 8, 2019). As relevant here, the court concluded plaintiff failed to establish any Fourth Amendment violation or Fourteenth Amendment due process violation related to the criminal trial. It then declined to exercise jurisdiction over the remaining state law claims. The Third Circuit affirmed. See Lentz v. Taylor, No. 19-1756, 2021 U.S. App. LEXIS 32868 (3d Cir. Nov. 4, 2021).

Plaintiff subsequently filed the instant action in the Law Division in which she alleged (1) all defendants unlawfully discriminated against her based upon her sexual orientation in violation of the LAD; (2) the OCBOE breached the CBA by "unlawfully constructively terminating" her employment; (3) Taylor

8

and the Comegno defendants tortiously interfered with the CBA; (4) all defendants intentionally inflicted emotional distress upon her; and (5) all defendants maliciously initiated her criminal prosecution. As noted, plaintiff Petrozza also brought a per quod claim.

Plaintiff sought discovery of documents defendants claimed to be privileged and accordingly, she moved to pierce the attorney-client privilege. After considering the parties' submissions and oral arguments, the court granted in part plaintiff's motion in a May 11, 2023 order, explaining its reasoning in a May 5, 2023 oral ruling. Applying a probable cause standard, the court concluded plaintiff satisfied all three prongs of Kozlov.[3] Specifically, with respect to whether plaintiff established a legitimate need for the evidence, the court considered the Mauti[4] decision, and found it "impossible to look at this

---

[3] Absent a waiver or a party placing privileged communications at issue, to pierce the attorney-client privilege, a party must establish (1) "a legitimate need . . . to reach the evidence sought to be shielded"; (2) the evidence must be relevant and material to an issue in the case; and (3) there must be a finding, by a fair preponderance of the evidence, that the information sought cannot be obtained from a less intrusive source. In re Kozlov, 79 N.J. 232 (1979).

[4] As relevant to the issue before us, the Mauti court stressed the first "need" prong of Kozlov is satisfied only "(1) where a constitutional right is at stake, or (2) a party has explicitly or implicitly waived the privilege." 208 N.J. at 538-39. The court further explained a legitimate need exists "only in the most narrow

tort matter without the criminal overtones to it" or "to read this complaint without seeing that there are constitutional overtones to it." The court reasoned the allegations of "conspiracy and prosecution" raised "clearly constitutional issues" and this case "is the only forum in which the plaintiff can seek recourse for that constitutional violation."

As to the relevant and material prong, the court explained "evidence of communications between and/or among" the defendants was "obviously relevant and material to the allegations of the plaintiffs' complaint" involving a conspiracy to initiate the prosecution of plaintiff. The court also concluded there were no less intrusive means to obtain the information, as depositions would be "an effort in futility" because "[a]ny counsel is going to object on the basis of attorney-client privilege."

Finally, with respect to an in camera review, the court ordered "a two[-] step process": "[f]irst, [the court directed] counsel [to] confer and decide what is really, really privileged and relevant and then provide [the court] with the privilege log as to the items that you cannot agree upon and [it will] make a determination as to whether they need to be provided." It clarified that "there

_____

of circumstances, such as where a privilege is in conflict with a defendant's right to a constitutionally guaranteed fair trial." Id. at 538.

can be documents [defendants] choose not to show" to plaintiff and instead only provide to the court for in camera review. To the extent additional discoverable and privileged documents were located, the court stated it "would expect that [counsel] would use [its] ruling and apply it in a common[]sense way with regard to those additional documents."

In its written order, the court specified it denied plaintiff's motion "only to the extent that it might have sought unfettered access to all documents between and among defendants." It further ordered the parties to "meet and allow review of the privileged documents" within forty-five days, but noted "defendants can still withhold documents they claim are privileged" which were to be provided to the court for its in camera review "within [forty-five] and [sixty] days."

Defendants moved for reconsideration, arguing the court improperly relied upon disputed factual allegations, and inappropriately applied a probable cause standard when conducting its Kozlov analysis. Further, they contended there was no constitutional right at stake consistent with Mauti and requested the court stay its May 11, 2023 order.

After considering the parties' submissions and oral arguments, the court granted partial reconsideration in a November 2, 2023 written order, and

explained its decision in a written statement of reasons. First, the court acknowledged its application of the probable cause standard was incorrect, and "the standard should have been whether [plaintiff] had satisfied the court 'by a fair preponderance of the evidence including all reasonable inferences.'" Even under that standard, however, the court concluded plaintiff had met her burden under Kozlov.

With respect to the legitimate need prong under Mauti, the court found plaintiff's constitutional right to a fair trial under the Sixth Amendment was at stake, expressly concluding her malicious prosecution claim was "the civil equivalent of a constitutional right to a fair trial" and the criminal matter and constitutional issues were inseparable from the civil claims. It rejected defendants' contention that plaintiff's acquittal established no constitutional right was at issue and indeed found her "freedom and liberty were at stake in the criminal trial," which are "clearly constitutional issues."[5]

---

[5] Before the court, plaintiff also argued her civil claims affected her rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. Before us, however, plaintiff limits her argument that she satisfied Mauti and the first prong of Kozlov by relying exclusively on the Sixth Amendment. And, as discussed infra, the court's decision expressly limited its legitimate need finding to the Sixth Amendment as well. We accordingly limit our discussion and analysis of whether plaintiff has established a legitimate need under the first prong of Kozlov in a similar fashion. See Green Knight Capital, LLC v. Calderon, 469

The court also determined (1) "a trial cannot be a fair trial if there should never have been a trial at all," (2) "if after an acquittal it is determined that there was fraud involved in the trial, the acquitted defendant is entitled to know what occurred," and (3) "an acquitted defendant is entitled to recourse against the fraudulent accusers" which "only occurs in civil court." Additionally, it explained a contrary conclusion would "never [allow for] recourse for a falsely charged litigant, as they could never obtain necessary information through discovery to pursue their claims against their perpetrators if the information is protected by a privilege."

The court next reiterated its previous finding that the privileged evidence was relevant and material to plaintiff's claims. Its findings were based on defendants' privilege logs as it "ha[d] not seen the evidence." The court also noted its in camera review would reveal if any of the information was "not relevant and material." The court also again found plaintiff established there was no less intrusive source available, noting "[n]one of the [d]efendants have offered a less intrusive source for the information Lentz seeks" and taking

_____

N.J. Super. 390, 396 (App. Div. 2021) (holding "[a]n issue not briefed on appeal is deemed waived" (quoting Woodlands Cmty. Ass'n v. Mitchell, 450 N.J. Super. 310, 319 (App. Div. 2017))).

depositions "would be an exercise in futility" as "there is no reason to suspect that [counsel] would not assert the privilege in a deposition."

As to the work product privilege, the court explained it would conduct an in camera review of the documents to determine if they "are in fact work product." If not, it would order the documents produced unless subject to another privilege, but if they were, the court would again engage in a Kozlov analysis. In conclusion, the court found "the public interest in knowing the truth is substantial" and the public's and plaintiff's right "to know if there was any fabrication of evidence" outweighed defendants' assertion of privilege. It added "this balance is further protected by an in camera review."

The court vacated the portion of its May 11, 2023 order requiring the parties to meet and review the documents, and instead ordered defendants to "produce any and all documents listed in any privilege logs as subject to the attorney-client privilege and the work product privilege to the court for in camera review" within forty-five days. It also stayed its order "conditioned on [d]efendants timely filing an [i]nterlocutory [a]ppeal with the Appellate Division." Defendants moved for leave to appeal, which we granted on an accelerated basis.

II.

Before us, the BOE defendants argue the court erred in granting plaintiff's motion to pierce the attorney-client privilege because she failed to show a legitimate need for the evidence. Specifically, they contend this civil matter implicates no constitutional right, and plaintiff concedes there has been no waiver. The BOE defendants maintain "the protections afforded by the Sixth Amendment are limited to criminal prosecutions only" and highlight that neither the court nor plaintiff pointed to any authority to the contrary. In support, they note the plain text of both the Sixth Amendment and Article I, Paragraph 10 of the New Jersey Constitution limits the rights set forth therein to "criminal prosecutions," and "well-established case law" demonstrates the Sixth Amendment does not apply to civil actions, including Turner v. Rogers, 564 U.S. 431, 441 (2011); N.J. Div. of Child Prot. & Permanency v. R.L.M., 450 N.J. Super. 131, 143 (App. Div. 2017); and N.J. Div. of Child Prot. & Permanency v. N.T., 445 N.J. Super. 478, 492 (App. Div. 2016). They stress "[t]he question is whether there is a 'constitutional right at stake' to satisfy the 'legitimate need' requirement."

The BOE defendants also argue the court erred in its conclusion that plaintiff's malicious prosecution claim "is the civil equivalent of a constitutional

right to fair trial." Relying on <u>DiBella v. Borough of Beachwood</u>, 407 F.3d 599, 601 (3d Cir. 2005), they distinguish a common law malicious prosecution, as pled here, from a constitutional malicious prosecution claim, which requires an additional element of "a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." They also highlight plaintiff's acquittal and her unsuccessful constitutional claims in the federal action, including two separate malicious prosecution claims.

The BOE defendants next argue, even if the court's analysis were sound, it erred by reviewing only the privilege logs rather than conducting a complete in camera review of the privileged documents prior to granting plaintiff's motion. They contend the court did not "issue any 'specific determinations regarding [p]laintiffs' access to [the documents], including an expression of reasons for the court's rulings,'" contrary to <u>Seacoast Builders Corp. v. Rutgers</u>, 358 N.J. Super. 524, 542 (App. Div. 2003). Additionally, the BOE defendants maintain the court could not have properly determined the documents were relevant and material to plaintiff's claims, as required by <u>Kozlov</u>, 79 N.J. at 243, without first reviewing the documents.

The Comegno defendants largely echo the BOE defendants' arguments, adding the only application the Sixth Amendment has to civil proceedings

16

pertains to the appointment of counsel when a party may lose their liberty as a result of the proceeding, such as in State v. Ashford, 374 N.J. Super. 332, 337 (App. Div. 2004), in which an indigent defendant had a right to counsel for contempt of a domestic violence order. Because plaintiff is not at risk of losing her liberty, the Comegno defendants contend the Sixth Amendment has no application to this matter. They also argue "none of the elements of a malicious prosecution claim bear upon what constitutes a 'fair trial' within the meaning of the Sixth Amendment," and the court's conflation of the two is unsupported by New Jersey or federal law.

In requesting we affirm, plaintiff contends the court correctly found a Sixth Amendment interest implicated here, as she was "not informed of the nature and cause of the accusations that were made against her." She argues her "acquittal does not automatically mean that her Constitutional rights are no longer pertinent." Plaintiff distinguishes the cases relied upon by the BOE defendants, noting each "discuss[ed] how a party does not have Sixth Amendment rights during civil proceedings" but "that idea is not presented in this case." Rather, plaintiff contends "[t]he issue before the [c]ourt is whether [p]laintiffs presented a Sixth Amendment issue to satisfy the 'legitimate need' requirement under Kozlov and Mauti." In support of her position that she

17

satisfied that requirement, plaintiff highlights the inseparable nature of the criminal action and these claims, her inability to pursue their claims in any other forum, and "the injustices [she] has faced."

Plaintiff also argues there is no distinction between common law malicious prosecution and constitutional malicious prosecution, noting the court "found it ludicrous that [p]laintiffs needed to raise two separate malicious prosecution claims."  She notes unlike her claims, DiBella involved a federal cause of action for malicious prosecution pursuant to 42 U.S.C. § 1983.

Plaintiff relies on Merkle v. Upper Dublin School District, 211 F.3d 782 (3d Cir. 2000), a case involving a teacher's constitutional and malicious prosecution claims against a school district and superintendent.  She argues her malicious prosecution claim implicated a constitutional right, as in that case, where the court found the teacher's exercise of their right to freedom of speech was "inherent" to their malicious prosecution claim and the school district's probable cause to initiate prosecution.

Plaintiff also contends the court "made it clear that it would review all documents in camera" and if it "found that they were not relevant and material, then the [j]udge would not supply them to [p]laintiffs."  She also maintains the court properly reviewed the description of the documents provided by

18

defendants in their privilege log to determine their relevance and materiality, and these communications "between and among the defendants" alleged to have conspired against plaintiff satisfied the requirement. Plaintiff notes she does not object to any in camera review, but "only want[s] to ensure that [she] ha[s] access to discovery." Further, she argues an in camera review conducted after the court's ruling is permissible under Payton v. N.J. Tpk. Auth., 148 N.J. 524, 535 (1997), and would not be prejudicial to defendants.

Plaintiff also maintains the court properly conducted a full factual analysis for each prong, which are interrelated. She highlights the court's rejection of some of her allegations, and the deference typically afforded the court's factual findings. Plaintiff argues the factual issues will ultimately need to be presented to a trier of fact, but the court "needed to make factual determinations with the information that was provided."

## III.

"New Jersey's discovery rules are to be construed liberally in favor of broad pretrial discovery." Payton, 148 N.J. at 535 (citing Jenkins v. Rainner, 69 N.J. 50, 56 (1976)). "While we normally defer to a trial court's disposition . . . unless the court has abused its discretion . . . deference is inappropriate if the court's determination is based on a mistaken understanding of the applicable

law." Connolly v. Burger King Corp., 306 N.J. Super. 344, 349 (App. Div. 1997) (citations omitted) (quoting Payton, 148 N.J. at 559). A trial court abuses its discretion "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Est. of Kotsovska by Kotsovska v. Liebman, 221 N.J. 568, 588 (2015) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)). Since "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference," Manalapan Realty, L.P. v. Manalapan Twp. Comm., 140 N.J. 366, 378 (1995), we review the applicability of the attorney-client privilege de novo.

"It is well-settled under New Jersey law that communications between lawyers and clients 'in the course of that relationship and in professional confidence' are privileged and therefore protected from disclosure." Hedden v. Kean Univ., 434 N.J. Super. 1, 10 (App. Div. 2013) (quoting N.J.S.A. 2A:84A-20(1); N.J.R.E. 504(1)). However, the privilege is "neither absolute nor sacrosanct." Id. at 11-12. Testimonial privileges are construed narrowly "because they prevent the trier of fact from hearing relevant evidence and thereby undermine the search for truth[,] . . . [and] courts sensibly accommodate privileges to the aim of a just result, and accept them to the extent they outweigh

the public interest in full disclosure." Mauti, 208 N.J. at 531-32 (citations and internal quotation marks omitted) (quoting State v. J.G., 201 N.J. 369, 383 (2010)).

The attorney-client privilege recognizes that "the confidentiality of communications between client and attorney constitutes an indispensable ingredient of our legal system." Hedden, 434 N.J. Super. at 11 (quoting In re Grand Jury Subpoenas Duces Tecum, 241 N.J. Super. 18, 27-28 (App. Div. 1989)). The privilege "[promotes] an open atmosphere of trust" and "rests on the need to 'encourage full and frank communication between attorneys and their clients.'" Id. at 10 (alteration in original) (quoting United Jersey Bank v. Wolosoff, 196 N.J. Super. 553, 561 (App. Div. 1984)).

Privileges "reflect 'a societal judgment that the need for confidentiality outweighs the need for disclosure.'" Mauti, 208 N.J. at 531 (quoting Payton, 148 N.J. at 539). As the Supreme Court explained, "privileges protect interests and relationships that have been determined to be 'of sufficient social importance to justify some incidental sacrifice of sources of facts needed in the administration of justice.'" Ibid. (quoting M. v. K., 186 N.J. Super. 363, 371 (Ch. Div. 1982)).

While "exceedingly important," our Supreme Court has cautioned that the privilege is not "sacrosanct." Kozlov, 79 N.J. at 242. As noted, to pierce the attorney-client privilege, a party must satisfy Kozlov's three-part test. The first prong of the test, legitimate need, is construed narrowly and is only satisfied when the privilege has been waived or "is in conflict with a defendant's right to a constitutionally guaranteed fair trial." Mauti, 208 N.J. 537-38.

As the Mauti court explained, the test is not "a broad equitable balancing test pursuant to which any privilege is subject to piercing if the adversary 'needs' relevant evidence that cannot be obtained from another source," as that approach "would eviscerate the privileges and trench on the legislative judgments informing them." Id. at 537. Further, the simple involvement of constitutional issues in the facts of a case does not necessarily indicate a constitutional right is "at stake." Id. at 539.

Here, as noted, the court expressly limited its finding plaintiff satisfied the first Mauti prong to the Sixth Amendment to the United States Constitution. Before us, the parties similarly confine their arguments to the Sixth Amendment and Article I, Paragraph 10 of the New Jersey Constitution. Accordingly, as noted, we limit our analysis to whether the record demonstrates plaintiff's Sixth Amendment rights were at stake in this matter.

The Sixth Amendment to the United States Constitution, which applies to the states by way of the Fourteenth Amendment, provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.
>
> [U.S. Const. amend. VI.]

The Sixth Amendment encompasses various rights, including the right to court-appointed counsel for criminal defendants unable to pay for an attorney, Gideon v. Wainwright, 372 U.S. 335, 339-40 (1963); the right to offer testimony of witnesses and present evidence in one's defense, Taylor v. Illinois, 484 U.S. 400, 409 (1988); the right for criminal defendants to cross-examine witnesses against them, Crawford v. Washington, 541 U.S. 36, 53-54 (2004); the right to a jury trial in criminal matters, Duncan v. Louisiana, 391 U.S. 145, 155-56 (1968); the right to a speedy trial in criminal prosecutions, Klopfer v. North Carolina, 386 U.S. 213, 222-23 (1967); and the right to public access to criminal trials, In re Oliver, 333 U.S. 257, 266-68 (1948).  Taken together, "the purpose of the rights set forth in [the Sixth] Amendment is to ensure a fair trial." United

States v. Gonzalez-Lopez, 548 U.S. 140, 145 (2006). While "[t]he Constitution guarantees a fair trial through the Due Process Clauses, . . . it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment." Id. at 146 (quoting Strickland v. Washington, 466 U.S. 668, 684-85 (1984)).

It is well-established that the Sixth Amendment is generally not applicable in civil proceedings. See, e.g. Turner, 564 U.S. at 441 ("the Sixth Amendment does not govern civil cases"); N.T., 445 N.J. Super. at 492 ("[t]he Sixth Amendment right of confrontation is not applicable to civil proceedings" (alteration in original) (quoting N.J. Div. of Youth & Fam. Servs. v. V.K., 236 N.J. Super. 243, 253 (App. Div. 1989))); N.J. Div. of Youth & Fam. Servs. v. N.S., 412 N.J. Super. 593, 634 (App. Div. 2010) ("[t]he Sixth Amendment safeguards an accused's right to counsel to defend a criminal prosecution. . . . It is not applicable in this civil proceeding"). Indeed, by its explicit language, the protections of the Sixth Amendment apply "[i]n all criminal proceedings." U.S. Const. amend. VI. On this point, plaintiff has identified no contrary authority, nor has our independent research uncovered any.

Faced with the lack of legal authority on the foundational point relied upon by the court in support of its conclusion she satisfied the first Mauti prong,

24

plaintiff contends the issue is not whether Sixth Amendment rights apply in civil matters, but "whether [she] presented a Sixth Amendment issue to satisfy the 'legitimate need' requirement under Kozlov and Mauti."  We are not satisfied this is distinction with a difference.  Mauti requires not just presentation of a constitutional issue, but that the constitutional right be at stake.  208 N.J. at 538-39.  Simply put, if plaintiff's Sixth Amendment rights do not apply to her civil action, the rights afforded by that amendment cannot be at "stake."

Stated differently, contrary to the court's conclusion, maintaining the attorney-client privilege does not place any right afforded by the Sixth Amendment in jeopardy.  Indeed, there is no right under the Sixth Amendment to "know what occurred" if an acquitted defendant discovers "there was fraud involved in the [criminal] trial," nor to "recourse against the fraudulent accusers."  Although plaintiff's "freedom and liberty" were certainly at stake in the criminal action, nothing about plaintiff's claims here implicate either.  She does not face criminal conviction, incarceration, or any other imposition upon her freedom or liberty should her civil claims fail.

Nor does plaintiff's malicious prosecution claim alter the analytical calculus and, on this point, it appears the court conflated the constitutional issues in the criminal and civil actions.  By its very nature, all malicious prosecution

claims necessarily involve a criminal proceeding, allegedly motivated by malice.  See LoBiondo v. Schwartz, 199 N.J. 62, 90 (2009) (holding "[m]alicious prosecution requires the plaintiff to prove four elements: (1) a criminal action was instituted by this defendant against this plaintiff; (2) the action was motivated by malice; (3) there was an absence of probable cause to prosecute; and (4) the action was terminated favorably to the plaintiff").  That the claim requires an underlying criminal action does not mean, however, that the constitutional protections present in such a proceeding are imported into a civil action in all circumstances.  Stated differently, were we to accept plaintiff's and the court's position on this point, it would render the language of the Sixth Amendment limiting it to "criminal prosecutions" meaningless and would ultimately mean a constitutional right was "at stake" for purpose of piercing the privilege any time a claim involved a previous criminal action.

Additionally, as the BOE defendants aptly note, none of plaintiff's claims, including count five sounding in malicious prosecution, seek vindication for violation of constitutional rights.  They alleged no conduct violating any specific constitutional provision and brought no causes of action arising under the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to -2, which provides recourse for such

26

violations. This stands in stark contrast to the claims they brought in the federal action, many of which specifically raised constitutional violations.

Finally, we conclude plaintiff's reliance upon <u>Merkle</u> is misplaced. That case involved federal constitutional claims and the court specifically declined to exercise jurisdiction over the plaintiff's Pennsylvania state law claims. <u>Merkle</u>, 211 F.3d at 785. Further, the Third Circuit rejected the plaintiff's contention that a Sixth Amendment right was implicated in her malicious prosecution claim. <u>Id.</u> at 792 (finding "[i]t is difficult to understand how the Sixth Amendment is implicated here").

As noted, the attorney-client privilege "protect[s] interests and relationships that have been determined to be 'of sufficient social importance to justify some incidental sacrifice of sources of facts needed in the administration of justice.'" <u>Mauti</u>, 208 N.J. at 531 (quoting <u>M.</u>, 186 N.J. Super. at 371). While plaintiff's allegations are undoubtedly serious, she has failed to establish that any Sixth Amendment right is at stake to permit piercing the attorney-client privilege.

Finally, we also address the portions of the court's orders directed at the in camera review process because the court's mandate seems unclear. We first detail the appropriate approach. "When a requesting party challenges an

assertion of privilege, the court must undertake an in camera review of the purportedly privileged document or information and make specific rulings as to the applicability of the claimed privilege." Brugaletta v. Garcia, 234 N.J. 225, 245 (2018). When conducting its in camera review, the court "must examine each document individually, . . . explain as to each document deemed privileged why it has so ruled," and "make specific determinations regarding [the requesting party]'s access to them, including an expression of reasons for the court's rulings." Seacoast Builders Corp., 358 N.J. Super. at 542 (quoting Payton, 148 N.J. at 550); see also Comprehensive Neurosurgical, P.C. v. Valley Hosp., ___ N.J. ___, ___ (2024) (slip op. at 58) (directing court on remand to "conduct a document-by-document review" of documents claimed to be privileged).

Here, the court determined plaintiff satisfied all three parts of the Kozlov test based upon solely its review of defendants' privilege logs, and then ordered defendants to produce the documents for a further in camera review. The proper procedure would have been to address the first prong of Kozlov, and if satisfied, conduct an in camera review of each of the documents individually to determine whether plaintiff met the second and third prongs, and make particularized findings as to each document.

A-1175-23

Despite this irregularity, we are satisfied for the reasons expressed the court's <u>Mauti</u> finding was erroneous even without having reviewed the documents at issue. Should any future challenges to privilege arise, the court shall first conduct an in camera review of the documents sought before addressing the second and third <u>Kozlov</u> prongs. And, as noted, it should address each document individually and make appropriate findings.

We decline to address the parties' remaining arguments as it is unnecessary for us to do so in light of our determination plaintiff failed to establish the first <u>Kozlov</u> prong. As we have reversed the court's May 11, 2023 order, we similarly vacate its November 2, 2023 reconsideration order.

Reversed, vacated and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

29

A-1175-23